## Lyon vs. Ewings and others.

17    61
106   115

The decisions of this court in *Clark vs. Farrington,* 11 Wis., 306, and other cases, as to the power of railroad companies to receive from a subscriber, in payment for stock, a promissory note secured by a mortgage on real estate, adhered to.

The Milwaukee & Mississippi Railroad Company, a corporation of this state, in 1851, executed its bond for the payment of $1,500, with interest at *ten* per cent., payable in New York city, and included in the bond an assignment of a note made in this state and of a mortgage securing the same, upon land in this state; and delivered the bond, with the note and mortgage attached thereto, to its agent in this state, to be negotiated for money for its use. The agent negotiated the

bond for a loan of $1,500 in Connecticut, and deposited the money in New York to the credit of the company. *Held*, 1. That there is much reason to regard the contract of loan as governed by the usury laws of this state, in which case it is valid under ch. 64, Laws of 1851. 2. That if the law of the place of performance is to govern, the contract is valid by the laws of New York, which prohibit a corporation from interposing the defense of usury in any action.

Where a note is payable to order, delivery of it by the payee indorsed in blank, without recourse, transfers the title, and any subsequent holder is authorized to fill up the blank with his own name as indorsee.

One who takes a negotiable note as collateral security for a loan made at the time of the transfer, holds it with the same rights as to any equities between the maker and the payee, as if he had taken it by absolute purchase.

APPEAL from the Circuit Court for *Rock* County.

The defendant *Orison G. Ewings*, in 1851, executed to E. D. Holton, a mortgage of lands in this state, conditioned for the payment of a note of even date therewith, for $1,500, payable to said Holton or order, at Milwaukee in this state. As a part of the original transaction, and without any valuable consideration moving to him, Holton delivered the note, indorsed in blank "without recourse," and also assigned the mortgage, to the *Milwaukee & Mississippi Railroad Company*, which issued to *Ewings* therefor fifteen shares of its stock, of $100 each. The company then attached the note and mortgage to its own bond for $1,500, payable to one Bean or bearer, in ten years, at New York city, with interest at ten per cent. per annum, payable semi-annually at the same place on the presentment of interest coupons annexed to the bond; and by a clause in the bond the company assigned to the holder thereof, as collateral security, said note and mortgage, and authorized him, upon any default in the payment of principal or interest on said bond, to foreclose the mortgage, or take any other legal remedy on the note and mortgage against the mortgagor, or on the bond against the company. The company placed the bond, note and mortgage in the hands of said Holton in this state, to be used by him, as its agent, in raising money; and Holton afterwards, in January, 1852, negotiated it to the plaintiff at Bridgeport, Connecticut, for an advance of $1,500, taking off the coupons which by

their terms fell due before the date of such negotiation. The plaintiff, at the time, knew that the consideration of the note and mortgage was stock of said railroad company. The amount thus advanced was deposited by Holton in bank in New York City to the credit of the company, and was subsequently drawn out on its orders. About the same time the company issued stock to more than five hundred different persons, and to an amount exceeding $870,000, payment for which was taken in notes and mortgages as in this case. The land described in the mortgage in suit lies more than four miles from the Milwaukee & Mississippi railroad, and no part of it was or is "necessary for the construction, maintenance or repair of said road, or of the warehouses, machine shops or other fixtures connected therewith." Certain facts are alleged in the answer in this case, and stipulated to be true by the parties, which were relied upon by the defendants to show a subsequent total or partial failure of consideration for the note; but it is not necessary to state them here. Default having been made in the payment of interest in 1858 and subsequently, this action was brought to foreclose the mortgage, and for a judgment against *Ewings* and the *Railroad Company* for any deficiency.

The finding of the circuit court, beside the facts above stated, embodied the usury laws of New York and Connecticut in force in 1852. The court held that the company, under its charter, had no power to take the note and mortgage in payment for stock, and they were wholly void ; that the company was prohibited by its charter from taking a conveyance of land by either an absolute or a defeasible grant, and for that reason the mortgage was void from its inception, and the issue of stock therefor was also void; and also, that such note and mortgage, if valid, were held by the plaintiff merely as a pledge, and were subject in his hands to any defense which the maker had against the railroad company by reason of a total or partial

failure of consideration, or otherwise. Judgment for the defendants, from which the plaintiff appealed.

*Simeon N. Small*, for appellant.

*I. P. Walker*, for respondent:

1. The M. & M. R. R. Co. had not the power, by its charter, to take the note and mortgage in suit, in payment for its original capital stock, or as a means of combining or creating its original capital stock; the note and mortgage being but one transaction in five hundred similar ones, constituting on the part of the company a practice and habit in the manner of combining and creating its capital stock. (1.) Where a power or franchise is created by a statute, which prescribes the mode of its exercise, it must be exercised in the mode pointed out by the act, and in no other mode. Ang. & A. on Corp., sec. 291; 6 Gill, 381; 3 Wend., 485; 7 id., 31; 2 Cow., 699; 5 Barb., 649; 19 Johns., 1; 1 McLean, 41; 1 Maule & Sel., 593; 2 Pet., 527-540. (2.) The fifth section of the original charter of the company (approved February 11, 1847,) declares that the directors "shall have power to declare the time and manner and proportions in which the stockholders shall pay the *money* due on their respective shares, and to forfeit to the use of the company the shares of every person failing to *pay* any install ment so required, at a reasonable period, not less that thirty days, after the time by them appointed for the payment thereof: *Provided*, that no installment called in at any one time shall exceed twenty dollars per share; and that no installment shall be called by the directors without at least sixty days notice thereof in the newspapers as hereinbefore mentioned." The supplementary act, approved March 11, 1848, after authorizing the company to extend its road to the Mississippi, and to increase its capital stock, declares (sec. 3) that "all powers, regulations and restrictions, and all authority granted to, and liabilities of, said company, shall not in any manner be abridged, extended or altered by the increase of the capital stock and extension of the road as aforesaid, except such alteration, extension

and increase as is authorized by the provisions of this act."
By these sections the company, in creating its capital stock, is
restricted to payments in "money," and to twenty dollar in-
stallments at that, and is absolutely forbidden to deviate from
its charter in that respect; and the attempt to do so was a nul-
lity. 5 McLean, 197; 4 Denio, 480. 2. The second section of
the original charter declares that the company "shall be capa-
ble in law of purchasing, holding, selling, leasing and convey-
ing estate, either real, personal or mixed, so far as the same
may be necessary for the purposes hereinafter mentioned, *and
no farther.*" The tenth section provides "that the said corpora-
tion shall not, in their corporate capacity, hold, purchase or
deal in any lands within this territory other than the lands on
which said road shall run, or which may be actually necessary
for the construction or maintenance thereof, and of the ware-
houses, machine shops and other fixtures connected therewith."
A provision of law so clear must be applied and enforced with-
out judicial construction. 2 Wend., 277; 11 Pick., 490; 2
Pet., 662; 25 Wend., 177; 17 id., 304; Smith on Stat. Con.,
secs. 466, 478, 545, 548; Domat's Civil Law, prel. B, p. 13,
tit. 1, sec. 2, pl. 13; Vattel, b. 2, ch. 17, sec. 263; 6 Dane's
Abr., 600. The taking of mortgages upon land by the compa-
ny for its stock is a direct fraud upon these prohibitory clauses,
and an attempt to do circuitously what it is forbidden to do
directly. The mortgages convey to it what "not only savors
of the realty but partakes of it." " A real interest arising
out of the soil, though not the soil itself, is attempted to be
taken by the mortgages; and this attempt, being in fraud of
the prohibition, cannot be carried into effect." 1 Powell on
Mort., 106; 17 Vesey, 464; 10 id., 44; Ambl., 526, 704; 2
Hovenden on Frauds, 308–312; 2 Bl. Com., 274, note 5; 5
McLean, 196–7; 4 Denio, 480. A mortgage taken by the com-
pany for the most meritorious debt would be void, and could
not be foreclosed; and no judgment in favor of the company
would constitute a lien upon land, or enable the company to

execute it upon land, or acquire title to land under it by purchase.   7 Vin. Abr., Pl. 5; 1 Powell on Mort., 107, note "A." 3. The bond of the railroad company is void for usury.   By the laws both of Connecticut and New York, the rate of interest is limited to *seven* per cent. ; and the instrument by which a higher rate is reserved, and all deposits to secure a higher rate, are made void.   The law of the place where the contract is to be performed, governs as to the validity of the contract. Story's Conflict of Laws, secs. 242, 242 a, 280, 291–2; 13 Pet., 65.   It will make no difference that a security has been taken, by way of mortgage, upon land located in a state where the interest reserved is legal.   Story, secs. 287, 288 a.   If the bond was void for usury, the deposit to secure it was also void, and hence the plaintiff never acquired any interest in the note or mortgage.   4.   Counsel argued that the consideration of the note had wholly failed, and that the defense on that ground was good against the plaintiff; that the latter held the note and mortgage as a mere pledge, and had only a special property in them, the general property remaining in the company; and that the utmost right of the plaintiff, according to the most liberal rule of equity, was to be subrogated to the rights of the company, in which case the same equities could be set up against him as against the company.   1 Hoff. Ch. Rep., 166.

*By the Court*, COLE, J.   The power of a railroad company to receive from a subscriber, in payment of its stock, a promissory note secured by a mortgage on real estate—instead of being paid therefor in cash—was distinctly affirmed in *Clark vs. Farrington*, 11 Wis., 306; *Blunt vs. Walker*, id., 334; and *Cornell vs. Hichens*, id., 353. Since those decisions were pronounced, many other cases have come before us involving the same question of power, and have been decided in the same way. These cases were all well argued, and were considered with all the care and attention we were able to bestow upon them consisttently with a proper discharge of our other duties   And as

the result of our best judgment upon the matter, we were of the opinion that railroad corporations, under the provisions of the various charters that came before us, had authority to take stock subscriptions in this manner, and that in so doing they were not acting *ultra vires*.    The argument on the part of the respondent in this case was confined almost exclusively to an examination of those decisions, particularly that in *Blunt vs. Walker*, the counsel contending that we had entirely misapprehended the law upon this subject, and had placed an erroneous construction upon the charter of the Milwaukee and Mississippi Railroad Company, under which the contracts in that case and this were made.    But notwithstanding this point was argued at great length and with much ability, we confess our views heretofore expressed upon this question of power remain unchanged.    We still think the Milwaukee and Mississippi Railroad Company, in exchanging its stock for a note and mortgage, with the evident design of selling those securities for the purpose of raising money with which to construct its road, did not exceed its corporate powers.    For it seems to us that the power given the directors in those provisions of the charter referred to in *Blunt vs. Walker*, includes the right to employ the means requisite and fairly applicable to the attainment of the ends of such power, which are not precluded by restrictions or exceptions in the charter, or are not immoral nor contrary to public policy.    And we can see no essential difference in the transaction, whether the stock subscriber should himself sell his note and mortgage to raise the money with which to pay for stock, or whether the company, on exchanging its stock for such securities, should itself convert them into money and thus raise the means to build its road.    But it is not proposed at this time to enter upon a discussion of the question whether the company acted outside its charter in receiving the note and mortgage in payment of its stock.    Our views and reasoning upon this subject are fully disclosed in the opinions already rendered.    Another argument would nec-

essarily go over the same ground covered in the previous de-
cisions. It is believed that no objection was taken or authori-
ty cited to show a want of power on the part of the corporation
to enter into these contracts, other than had already been raised
or brought to the attention of the court in the argument of
other causes. The question of power, therefore, will be per-
mitted to rest upon the grounds upon which it has been placed;
and we will proceed to notice some other questions raised upon
the record and necessary to be considered. First, it is object-
ed that the bond of the railroad company, for the payment of
which the note and mortgage were transferred as collateral se-
curity, was void for usury. The material facts relating to this
transaction were the following: The railroad company, in
May, 1851, made and executed its bond containing an assign-
ment of the note and mortgage, and, having attached together
the note, mortgage and bond, delivered them so attached to its
agent in this state, to be negotiated for money for its use. In
January, 1852, the agent, at Bridgeport in the state of Con-
necticut, transferred the bond with the note and mortgage thus
attached, to the appellant, in consideration of a loan of fifteen
hundred dollars made by him to the company at the time of
such delivery, the coupons for interest to January 1, 1852,
having been cut off and retained by the company. No con-
tract had been made for this loan to the company previous to
the time of said delivery to the appellant. The amount of the
loan was received by the agent and deposited by him to the
credit of the company in a bank in the city of New York,
whence it was afterwards drawn out upon the order of the com-
pany. The bond draws interest at the rate of ten per cent.,
and the principal and interest, by the terms of the bond, were
payable in New York.

If the contract is considered with reference to the laws of
this state, then clearly it is valid, because the railroad com-
pany was expressly authorized to borrow money of any person
or corporation at any rate of interest which might be agreed

upon, any law upon the subject of usury of this state, or any other state where the loan might be effected, to the contrary notwithstanding.   Chap. 64, Laws of 1851.   This provision of law fully empowered the company to contract for any rate of interest which it might see fit to pay.   If therefore the transaction is considered with reference to our laws, it was not prohibited by any law of usury.   And that there is much reason for saying that the contract is a domestic one, and to be governed by the laws of this state, we think is manifest from the following considerations.   The bond was made by the company in this state, and placed in the hands of its agent to be negotiated wherever it could be done for the best interests and advantage of the corporation.   The company was organized to construct a railroad in this state, and the money borrowed was to be used exclusively for the accomplishment of this object. The bond was secured by a note and mortgage given and payable in this state.   And it is a more probable and reasonable inference that the company executed the bond wholly with reference to the laws of this state, than to say that it did so with the intention of evading the laws of some other state, upon the subject of usury.

But suppose we are mistaken in this, and that the contract must be construed with reference to the laws of New York, where the principal and interest were payable.   By the law of that state a corporation was prohibited from interposing the defense of usury in any action (*Curtis v. Leavitt*, 15 N. Y., 9 ; *Butterworth v. O'Brien*, 23 id., 275); and it has been held that the act applied to a foreign corporation litigating in the courts of that state.   *Southern Life Ins. & Trust Co. v. Packer*, 17 id., 51.   If therefore the place of performance is to govern, then indubitably the railroad bond is a legal and valid obligation.   And if the courts of New York would enforce this contract, for a much stronger reason should the courts of this state do so, in view of the provisions of the charter which permit the company to agree for the payment of any rate of interest

on loans contracted for the purpose of constructing its road.

On the trial, the respondent *Ewings* attempted to defeat a recovery in whole or in part by showing a failure of consideration, or that he had been injured by some action of the board of directors in reference to the transfer of his stock upon the books of the company. And the admissibility of this defense depends entirely upon the question whether the appellant holds these securities free and discharged from all equities existing between *Ewings* and the railroad company. We think it very clear that he does. It is not pretended that the appellant, at the time of the transfer, had notice of any of these matters set up in the defense. And the fact that he took the note and mortgage as collateral security for money actually loaned at the time of such transfer upon the bond of the company, does not, within all the authorities, render him less entitled to the protection of the statute. Nor was there anything in the manner in which the note was transferred calculated to affect him with notice or put him upon inquiry. The note and mortgage were in terms made payable to the order of Edward D. Holton, who indorsed the note in blank without recourse. Such an indorsement we suppose transfers the title to and property in the note to any subsequent holder. Therefore it is not neceesary to rely even upon the rule laid down in *Crosby v. Raub*, and *Kimball v. Porter*, recently decided by this court. 16 Wis., 616. For here, although the payee transferred the note without rendering himself liable thereon, yet his indorsement was valid according to the law merchant, and authorized any holder to fill it up with his own name.

We therefore think the judgment of the circuit court should be reversed, and the cause remanded with directions to render judgment in favor of the appellant according to the prayer of the complaint.