SEARIGHT, THORNTON & CO. *v.* PAYNE *et al.*

1. CORPORATION. *Iron furnace. Supply store. Powers.* A supply store is necessary in carrying on the business of an iron furnace, and therefore fairly included in the powers of the corporation.

2. SAME. *Capital stock. Payment in money and in property.* While in a corporation to do business on cash it would probably be required that the money should be paid, yet in the case of a corporation for making iron, the stock subscription may be paid in property necessary to the business, if paid in good faith at its real value.

---

FROM DAVIDSON.

---

Appeal from the Chancery Court at Nashville. W. F. COOPER, Ch.

J. A. CAMPBELL for complainants.

ED. H. EAST and J. C. BRADFORD for defendants.

FREEMAN, J., delivered the opinion of the court.

The bill and amended bill are filed, seeking to make defendants individually liable for debts contracted for goods and supplies sold to the Worley Furnace Company, an incorporated iron company doing business in Dixon county.

Two grounds are mainly relied on to sustain complainants' theory. First, that the charter required the payment of the capital stock, $50,000, in order to organization of the corporation, and that this was not

·done. Second, that respondents falsely and fraudulently represented the corporation to be solvent, when they knew it was not so, and by this fraudulent means obtained possession of the goods sold. A third ground may be added, that is, that the goods were purchased for a "supply store" connected with the furnace, and this not authorized by the charter.

We need but say, as to the last ground, that it is abundantly shown, that such a store is a usual if not universal incident to, and necessary in carrying on such business, and therefore may be fairly included in the powers of the corporation. This being so, we take it, no personal liability can arise out of this aspect of the case.

On the first question presented, the facts are, that the corporation was authorized to be organized, when the capital of $50,000 was subscribed, and then be liable to calls as the company might need. Whether there is anything in this question to sustain the contention of the complainants, if true, we need not decide. We find that the capital stock was subscribed and was also paid in property; that the coal lands and iron lands, with the other necessary outfit for the business, as was no doubt contemplated by the corporation at the time of incorporation, was thus used, while in a corporation to do business on cash, it would probably be required that the money should be paid. Yet, in the case of ·one like the present, where the first step is to procure the lands, ores, coal, etc., and build furnaces, and then obtain the necessary outfit in the way of horses, mules, wagons, etc., in order to the carrying on of

Searight, Thornton & Co. *v.* Payne.

the business, we can see no sound reason why these properties may not as well be paid in at their actual *bona fide* value, on stock subscription, as to pay the money and then invest that in the property. To go through the mere form of paying in the money, and immediately paying it out for the property, would not in any way facilitate the business, or aid the - after creditors of the firm, nor furnish them any additional security for their debts.

So it seems repeatedly to have been held in Pennsylvania, Wisconsin and other States, and we think correctly: 17 Wis., 61, and other cases cited by counsel in brief.

On the question of fraudulent representations we need but say, that there is not the slightest evidence of any bad faith on the part of these respondents, and so the chancellor has found. The business proved unfortunate, but certainly as much to the disappointment of these respondents as to any one else, and far more to their loss.

On the whole case we have no hesitancy in affirming the decree of the chancellor with costs.