THE OGDENSBURGH, CLAYTON & ROME RAILROAD COMPANY, Appellant; *v.* WILLIAM W. WOLLEY, Respondent.

Though the law require the subscriber to the capital stock of a railroad company to pay ten per cent in cash at the time of subscribing, to make a valid contract binding on the parties, yet if the subscriber, instead of paying the ten per cent in cash, give his note for the same, and subsequently pay it; so that the company gets the money, he is thereby constituted a legal stockholder of such company, and is liable on his subscription. ·

Once becoming a legal stockholder, he cannot afterward repudiate any part of the legal obligations he assumed in becoming such.

The giving of a negotiable note by which the company realizes the money and the paying of said note is, in legal effect, a cash payment.

A contract is not void as against a statute, unless founded upon an illegal consideration which enters into, and forms a part of the contract, or, unless it provides for doing something distinctly forbidden.

APPEAL from an order of the Supreme Court granting a new trial, with stipulation for final judgment.[1] The action was brought to recover sundry installments alleged to be due upon a subscription, by the defendant, of $700, to the capital stock of the plaintiff. The defendant, in his answer, denied that he ever became a subscriber to the capital stock of said corporation, or that he ever paid the sum of $70 to the directors of said corporation or plaintiff; or that he ever paid or became liable to pay, any sum whatever, either as or for the first ten per cent, or as and for subsequent installments.

The cause was referred to the Hon. WILLIAM J. BACON, who ordered judgment for the plaintiff for $333.16.

The following are the referee's findings of fact and conclusions of law:

The plaintiff was organized as a corporation, as alleged in the complaint, that thereafter and sometime in the fall of 1853, the defendant subscribed for $1,000 of the stock of the plaintiff's, such subscription being made while the subscription book was in the hands of Alanson H. Barnes, a director of said company, duly authorized to receive the same; that nothing was paid upon said subscription at the time, but the

defendant gave his promissory note to said Barnes, for $100, as and for the ten per cent required at the time of subscrib ing; that subsequent to this, and in the summer of 1854, an arrangement was made by said Barnes by which the sub scription of said defendant was agreed to be and was reduced to the sum of $700, and defendant's name was entered on plaintiff's books as a subscriber for $700 of stock; and in the month of July, 1854, and again in September, 1854, the de fendant gave two negotiable promissory notes, in which were embraced and included the original ten per cent, and the several calls which had been made and was due upon said stock, down to, and including the call due and payable on the 1st of August, 1854, and the note of $100 was thereupon surrendered to the defendant; that the said notes, before their maturity, were negotiated to, and discounted by, the Bank of Lowville, by which bank they were held and owned at and after maturity; that subsequently suits were brought upon both of said notes in favor of said bank; that the defendant employed an attorney and put in an answer to said suits, but before the time of the trial, becoming satisfied that the bank had discounted the notes without notice and in the ordinary course of business, he abandoned the defense, and judgments were taken upon the notes, which judgments the defendant subsequently paid, and thus both notes were satisfied and paid; that calls were made by the plaintiff for payments upon said stock, as alleged in the complaint, of which defendant had due notice, and that he has neglected and refused to pay the several calls due and payable on the 1st of November, 1854, the 1st of February, 1855, the 1st of November, 1855, and the 10th of November, 1857.

On these facts the referee's conclusions of law were, that the defendant is not discharged from his subscription by the omission to pay ten per cent in cash at the time of subscrib ing, but that the giving of the notes, which included the ten per cent and the subsequent calls, and the payment thereof operated as a waiver of any right he might have had to repudiate his subscription, and was a ratification thereof, and an assent to be bound by it as an exising and continuing lia-

bility; and that the plaintiff is accordingly entitled to judgment for $333.16, being the amount of the four calls above mentioned, with interest from the date of each call respectively.

Judgment being entered on the report of the referee, the defendant appealed to the General Term of the Supreme Court, where the same was reversed, and a new trial granted, with costs to abide the event. From this order the plaintiff appealed, stipulating that if it be affirmed, a judgment absolute may be rendered against the company.

*J. H. Reynolds,* for the plaintiff.

*E. A. Brown,* for the defendant.

WRIGHT, J. The defendant became a subscriber to the plaintiff's capital stock; but at the time of subscribing did not pay ten per cent in money. Subsequently, by agreement, the original subscription was reduced from $1,000 to $700, and on two occasions he gave to the company two negotiable notes, in which were embraced and included the original ten per cent and the several calls which had been made, and which were due and payable upon the stock down to the 1st of August, 1854. These notes the defendant afterward paid. Before their maturity they were discounted for the railroad company by the Bank of Lowville, and subsequently suits were brought by the bank upon them, judgments taken again by default, and the judgments satisfied and paid by the defendant. Thus there was an actual payment of the original ten per cent, and three several subsequent calls or installments of ten per cent each. After forty per cent had been paid on the subscription, the defendant, in an action to recover further installments, alleges as a defense that such subscription is invalid, and he is not bound by it because of his omission to pay ten per cent in cash cotemporaneously with the act of subscribing.

If the statute not only requires a subscription on the books of the company but that such subscription should be attended by a cash payment of ten per cent to make a valid contract

and one binding on the parties, the defense must succeed. On the contrary, if a cotemporaneous cash payment was not necessary to the validity of the subscription, or was not a condition precedent to the defendant's liability attaching; or if the subsequent payment of the ten per cent, voluntarily or involuntarily, so that the company actually got the money, invested the defendant with all the rights of a stockholder in the plaintiff's corporation, and he could have compelled a delivery of the stock to him when the action was brought, there is no defense. If he ever became a stockholder he could not repudiate his obligation to pay for the stock for which he had subscribed, and if, as was doubtless the case, the object of the statute requiring a subscriber to pay ten per cent in cash on the amount subscribed, was to secure money to the plaintiff on a subscription to its stock, it was fully acomplished in the present case. The money, it is true, was not paid simultaneously with the subscription, but it was afterward realized by, and went into the treasury of the company, and I am unable to see why the subscription would not at least be valid and binding, from the time the money was realized, which was before the commencement of the suit. It could only be otherwise upon the ground that to make a valid and obligatory contract for stock between the company and the subscriber, the statute imperatively requires two things to be done, viz. : a subscription and payment by the subscriber of ten per cent of the amount subscribed by him *in cash at the time of subscribing*, and that unless the subscription and payment are simultaneous, though the ten per cent may be subsequently paid and the money realized by the company, no liability attaches to the subscriber. This position I consider untenable and it has been so regarded in at least two cases in this court. In the case of *The Black River & Utica Railroad Company* v. *Clarke* (25 N. Y., 208), the defendant made no cash payment at the time of the subscribing. He subsequently paid forty per cent on the amount of his subscription and then, as in this case, sought to defend an action to recover further installments on the ground of the invalidity of the contract, because of the omission to pay the ten

16

per cent in money at the time of subscribing; but the court held that after the actual payment of forty per cent on the subscription, the statute requirement on this point must be deemed fully complied with, and the defendant was bound by the contract. In *Beach, Rec'r,* v. *Smith* (a case not yet reported) the defendant paid no money at the time of subscribing. He had been acting for the company some three months before he subscribed, in July 1853, and continued in its employ afterward. On the 25th of February, 1854, he settled with the company, charging himself with the ten per cent, and also with another installment of ten per cent called for and payable on the first of February, 1854, and the company paid him the balance of his account. The court said : " It is sufficient that the ten per cent, or the first amount to be paid has been subsequently paid to render the subscription valid and binding upon the defendant. On the 25th of February, 1854, he in fact not only paid the ten per cent, but the first installment called for, of ten per cent, payable on the first day of that month. He had, therefore, on that day paid twenty per cent on the amount of his subscription, and he cannot now be permitted to allege that it was not valid because he did not at the time of subscribing pay the ten per cent in cash," The only distinction between these cases and the present is, that in the first case cited, the subsequent cash payments were made directly to the company by the defendant; in the second no money was paid, but the defendant settled with the company, voluntarily charging himself, in such settlement, with the two installments as so much money paid on his subscription, the company paying him the balance of his claim against it. In the present case the defendant did not directly pay the money, but with the intent to effectuate his subscription gave negotiable notes for three installments, and also for the original ten per cent; and these notes he afterward paid. When he gave the notes he had not reached the point of attempting to repudiate his subscription. By giving them he authorized the plaintiff to negotiate them and apply the proceeds in payments upon his subscription, and this was done, and is the same in legal effect as if he had

paid the money himself.  It can make no difference whether the defendant afterward paid the notes thus given, willingly or not, so long as they were in fact paid.  If there was an actual payment of the ten per cent, though the defendant may have afterward made an ineffectual effort to get rid of the payment of the notes which supplied the plaintiff with the means of actually getting the money, the subscription would not be void.  Certainly the validity or invalidity of a subscription to stock under the general railroad act can not depend on the fact whether the statute has been complied with in the payment of the ten per cent willingly or unwillingly by the subscriber.  A subscription cannot be valid when the money has been subsequently voluntarily paid, and invalid when there has been an actual payment — it may be against his will at the time the money is received.  In the cases cited it was distinctly held that a subscription was not invalid, though there was an omission to make the cash payment simultaneously with subscribing.

It was said that the intent of the railroad act was that no subscription should be valid until ten per cent in cash was paid thereon, and not that it should be invalid if the actual subscription and payment of the money were not simultaneous acts; that writing the name in the subscription book, should be deemed but part of the transaction, and provisional or conditional until the ten per cent is paid; but after payment, and certainly after payment of forty per cent on the subscription; as in Clark's case, and twenty per cent thereon as in the case of Smith, the statute requirement on this point must be deemed fully complied with.  In both the cases, the contract was held to be binding on the parties; though at the time of subscribing, no money was paid; in the one case, the party making a subsequent payment on his subscription of $400 which was more than the ten per cent; and in the other, the party never paying any money, but some eight months after subscribing, adjusting and discharging his demand against the company by crediting the latter with the original ten per cent; and a further installment for the same amount, and receiving the balance due to him after

deducting the two sums. The cases in effect, decide that there must be both a subscription and payment of money to make a binding contract, but that these acts need not be simultaneous, the statute being satisfied, and the contract of subscription complete, by a subsequent actual payment, or receipt of the money. And why not? Every substantial object of the statute requiring a money payment of one-tenth of the subscription is answered by the corporation actually getting the money. If the purpose of the require-ment be to secure money to the corporation on a subscription to its stock, such purpose is fully accomplished by the pay-ment before or after the subscriber writes his name in the subscription book of the company. Can there be any daubt, but that after a subscription and actual payment in cash of the required sum, the subscriber becomes invested with all the rights of a stockholder in the corporation? Is he a stockholder, when the payment of the money attends the act of subscribing, and not one, or having any rights as such, when the company omits to exact, and he to pay the ten per cent at the moment of subscription, but the corporation subsequently by his act in fact realizes the money? Clearly not. When there has been a subscription unattended by the cash payment, the cases referred to hold that the contract is still imperfect and incomplete. It has no binding force by the mere act of subscribing.

The statute, it is said, requires the payment of ten per cent in money on the amount subscribed, and until that is paid there is no legal or obligatory contract. The subscriber may refuse to make the cash payment and perfect the agree-ment for stock authorized by the statute. But if the statute be complied with, both in the subscription and actual cash payment of ten per cent, so that the corporation gets the money, though it may not have been paid or received at the time of subscribing, the contract is a valid and obligatory one. The subscriber becomes a stockholder, with the obli-gation upon him to make full payment for his stock, and with the right, upon such payment, to compel a delivery of it to him by the corporation. When the corporation in this

case got the original ten per cent, and the subsequent calls of thirty per cent, the defendant was clothed with all the rights of a stockholder in the corporation. He could not repudiate his obligations as such nor deny his liability to make full payment for the stock for which he had subscribed. After subscribing and voluntarily giving to the corporation the means of raising money to pay not only the original ten per cent, but further installments of thirty per cent, and the money had been actually received by the company to the extent of forty per cent of his subscription, it is absurd to pretend that he did not become a stockholder or that his subscription was not binding upon him because of the original defect in omitting to make the payment of ten per cent at the time of writing his name in the subscription book. Assume that the statute requires a subscription and payment of this ten per cent in money to concur to make a valid contract for the stock of a railroad corporation and one that will bind the parties. If the directors do not exact the money and the subscriber omits to pay at the time of subscribing it is the doctrine of former cases in this court that the contract remains incomplete and of no binding force. If, however, the money be subsequently paid, the statute is complied with; its object is accomplished by the corporation realizing in money one-tenth of the amount subscribed; all is done that is required to be done to make a valid subscription. And if the contract be not valid and binding before, it must be after the money has been paid or realized by the corporation. In Smith's case nothing was paid at time of subscribing, but eight months afterward he did what was equivalent to a payment of the ten per cent. He paid it by offsetting against the amount his claim for services rendered for the company.

. His subscription was held valid and binding upon him; and he was not allowed to allege the original defect in it, viz., omitting to make the cash payment at the time of subscribing, as a defense to futher calls. In this case, the defendant subscribed, but he did not at the time pay the ten per cent in cash. He gave to the company two negotiable

promissory notes for installments, and also for the original ten per cent. These notes were negotiated to, and discounted for the company by the Bank of Lowville, and in that way the corporation not only realized in cash the first ten per cent, but also three subsequent installments of ten per cent each. The notes were afterward paid by the defendant, it may be unwillingly, after he had been advised that he could avoid the subscription on the ground of its original defectiveness. This, however, does not affect the question of a compliance with the statute by the payment of ten per cent of the amount of his subscription. The company actually got the money, and the defendant intended this result. The notes which he gave were in a negotiable form, and, giving them in that form, he authorized and meant that the plaintiff should negotiate them and apply the proceeds in payments upon his subscription. This having been done, the legal effect of the transaction was the same as though he had paid the money himself. At all events, there was a subscription, and, by the subsequent voluntary action of the defendant, there was a payment to, and receipt by the corporation, not only of the original ten per cent, but three further installments of thirty per cent. After this, it is quite too late to allege that the subscription is not valid and binding upon him. Conceding it to have been invalid before the ten per cent in cash was paid to or realized by the corporation, it was a valid subscription from the time the money was realized. If the original subscription was not binding upon the defendant because of the omission to pay ten per cent in cash at the time it was made, his subsequent acts cured the invalidity. He became bound by it, and cannot now be permitted to allege the original defect in the subscription as a defense to further calls. I think, therefore, on the ground assumed by the referee, if on no other, his judgment was right.

It is, perhaps, unnecessary to discuss the point whether the contract of subscription was not valid and binding, even without payment of the ten per cent in money. Uncontrolled by former decisions of this court, I should have been of the opinion that the contract was complete when the books were sub-

scribed, and that it did not depend upon a payment by the subscriber, of any portion of the amount subscribed, to give it validity, or binding force. The statute authorizes this corporation to contract for the disposal of its capital stock ; it is empowered to open books of subscription, and receive subscriptions, until the whole amount is subscribed. There is thus authority to contract, and the mode of entering into the contract is distinctly pointed out. It is to be done by subscribing the books of the company. If there was nothing further, it would not be questioned that by subscribing a valid contract, and one binding on the subscriber, would be effected for the sum subscribed ; nothing would remain to be done to complete it ; there would be an agreement to take and pay for the amount subscribed. This promise would be to the corporation, and good by force of the statute. The corporation would be bound to deliver the stock on payment being made. But the section of the railroad act, authorizing the contract, contains this provision; "At the time of subscribing, every subscriber shall pay to the directors ten per cent on the amount subscribed by him in money ; and no subscription shall be received or taken without such payment. " (Laws of 1850, chap. 140, § 4.) Suppose, however, this provision is not observed—the subscriber omits to pay down the percentage, or the corporation to exact it—is there no valid contract, or rather none at all by which a subscriber is bound ? Is this a fair interpretation of the legislative intention ? Was it the design of the provision to prohibit any contract for stock of a railroad corporation, unless there was a subscription, and payment of the percentage on the amount subscribed, or that where a party subscribes he shall not be bound, if at the time of subscribing, the directors omit to exact and the subscriber neglects to make the money payment ? I think not.

I do not think payment was necessary to complete the contract of subscription. The law does not declare a contract for railroad stock to be void, unless the party both writes his name and the amount he proposes to take in the books of the corporation, and pays down in cash ten per cent of his subscrip-

tion; or that if he subscribes and omits to pay there is no binding contract, or no contract at all. The directors are forbidden to receive a subscription, without the payment of the ten per cent in money; but if they do receive it without exacting payment of the money, it is not declared that the contract entered into in the mode prescribed, viz., by subscribing the books opened by the company, shall be invalid, and bind nobody. The payment of the ten per cent is not, in terms, made a statutory element of a complete and valid subscription. The provision was obviously intended for the benefit of the corporation, and all that might become interested in its affairs, and I think might be waived at the request of the subscriber without impairing his legal obligation, arising out of his subscription. It is undoubtedly an illegality for the directors to receive a subscription without the payment of ten per cent in money, but such illegality does not enter into, or form a portion of, the contract of subscription. It is rather incidental and collateral, and is not inherent in the contract and forms no part of the consideration. The directors may be liable for a breach of duty; but so far as the subscriber is concerned his obligation to pay arises when he subscribes, and I think it remains until it is discharged by payment. A contract is not void as against a statute unless founded upon an illegal consideration which enters into and forms a part of the contract, or unless it provides for the doing of something distinctly forbidden. Neither of these illegal elements exist in a contract such as is involved in this case. It is lawful to subscribe and pay for railroad stock. It is the duty of the directors to exact, and of the subscriber to pay ten per cent of the amount at the time of subscribing. But if this be omitted the contract remains unaffected, and the obligation to pay still exists, as the only thing forbidden is the omission to exact payment of the ten per cent at the moment of subscription.

Had, therefore, no money been paid to, or realized by the plaintiff, I should for myself have been of the opinion that a subscription such as is involved in this case would be valid and binding on the subscriber. I can find no reliable

authority to. the contrary before the two recent cases in this court referred to. These hold that a subscription is not enough, but that the ten per cent must be paid before there is a valid and binding contract under the statute. Within the principle, however, of these cases the judgment of the referee was correct.

The order of the General Term granting a new trial should be reversed, and the judgment of the Special Term affirmed.

Johnson, J. (dissenting.) The statute requires every subscriber to the capital stock of a railroad company to pay to the directors ten per cent on the amount subscribed by him, in money, at the time of subscribing, and provides that no subscription shall be received or taken without such payment. (2 R. S., 5th ed., 669, § 4.) If, therefore, no such amount was paid by the defendant in compliance with this provision of the statute, the subscription never took effect, or became obligatory upon him, and this action cannot be maintained. It cannot require either argument or authority to show that the law will never aid a party to enforce a promise or agreement which it prohibited him from taking, or entering into. This provision is not for the benefit or convenience of the corporation simply, but is founded in wise considerations of public policy. The prohibition is absolute and unqualified unless the condition is complied with on the part of the subscriber, and the subscription can never ripen into a legal and binding obligation while such condition remains unperformed. It remains to be considered, therefore, whether there has, at any time, been any payment of money or its equivalent, to the plaintiff by the defendant which will satisfy the statute. The fact is established by the finding of the referee, that the defendant at the time of subscribing, instead of paying ten per cent on the amount subscribed in money, gave his promissory note for that amount in the place of such payment, which was afterward surrendered upon the subscription being reduced from $1,000 to $700, and two negotiable notes given, including the ten per cent and several subsequent calls. That

17

the giving and receiving of these promissory notes were not payments in money must be conceded. That proposition is too plain to admit of controversy. If they operated as payments at all, it was only *sub modo,* by new and additional promises of payment in money at a future day. The notes when taken were mere choses in action and not payment in money. If authority on this question is needed it is found in *Crocker* v. *Crane* (21 Wend., 211). The case, then, comes to this, whether the payment by the defendant of these notes to the holder, the bank of Lowville, was such a payment as the statute contemplates, and renders the previously void subscription valid. This court held in the case of the *Black River and Utica Railroad Co.* v. *Clarke* (25 N. Y., 208), that the payment of the ten per cent after the day on which the subscription was written was sufficient, and rendered the subscription binding; that the subscription in such a case would be regarded as having been begun on the day when it was written and completed on the subsequent day when the ten per cent was paid. In that case however the payment was to the company directly, or to its authorized agents by the defendant. And so in the case of *Beach, Receiver,* v. *Smith,* decided at the last March Term, where the company was indebted to the defendant for professional services rendered, and instead of passing the money back and forth, an amount exceeding ten per cent of the subscription was paid by crediting it upon the account which was then due, we held that this was, in substance and legal effect, a payment in money.

. It must be confessed that the court, in these cases, has been quite liberal in its interpretation of this statute, regarding substance rather than mere letter and form. It has, however, as it seems to me, gone already quite as far as it can safely go in this direction, and preserve the substance of the statute. The statute requires the ten per cent to be paid to the directors, at the time of subscribing, in money. In the present case there has never, at any time, been any payment by the defendant, in money or its representative, to the directors or any authorized agent of theirs. He gave his

promissory notes, which were entirely void so long as they remained in the plaintiff's hands, for want of consideration to support them. They became valid notes against the defendant in the hands of the Bank of Lowville, not because they were founded upon a good consideration, but simply because the holder took them before they became due, in good faith without notice that they had no consideration to support them. And when the bank undertook to collect them by action, and received the money it was in no respect as the agent of the plaintiff, but simply as owner and holder of the instrument, and on its own account. The defendant, in the transaction, has not paid his money to the plaintiff either in fact or in law. He could have avoided his notes in the plaintiff's hands, while there they were neither money nor valid choses in action. They became valid and binding against the defendant, upon the transfer, by operation of law, and not by the defendant's volition. He paid because the law obliged him to pay the holder, but he did not pay to the plaintiff. The money which the plaintiff obtained of the Bank of Lowville, upon the transfer of the notes, was not the defendant's money in any sense, legally or equitably. The plaintiff in transferring these notes, was not acting as the defendant's agent in raising the money, in any legal sense, and no farthing of the defendant's money has ever come to the hands of the plaintiff, upon the subscription. No money having been paid at any time by the defendant to the plaintiff, the subscription remained as it was at the beginning, a mere dead form. The giving of the note did not vitalize it, nor did the payment of the note to another as holder after action brought upon it. There has been no such payment upon the subscription, as the statute requires to make it valid, and no action can be maintained upon it. The order of the General Term reversing the judgment was right and should be affirmed.

WRIGHT J., reads for reversal; DENIO, Ch. J., concurs, not on concluding part of WRIGHT's opinion—there was no contract to pay the note on which the company could recover; but subsequent payments validated the subscription. The