Gilbert, J.
The bond and mortgage appear to be properly authenticated. The seal affixed to them purports on its face to be the corporate seal. It is declared to be such in the instruments themselves, and they are signed by the rector and clerk of the corporation. This is sufficient to show a formal execution of the bond and mortgage. The omission of the officer to take due proof of the execution of them conformably to the recording act does not affect their validity.
I am of the opinion, however, that the case shows a lack of authority to affix the corporate seal. The only authority claimed is derived from a resolution recorded in the minutes of a meeting of the vestry, held September 28, 1869, authorizing the rector and clerk to “execute a bond and mortgage, and affix the corporate seal thereto, for such amount as shall be reported by the committee on the treasurer’s accounts as sufficient to liquidate the balance of the indebtedness of the church.” The evidence leaves it very much in doubt *54 whether this resolution was in fact adopted by the vestry. I am strongly inclined to hold that it was entered in the minutes without their sanction.
But it is not necessary to decide that question. The minutes show that there were present at that meeting only the following trustees, namely : the rector, both wardens, and four vestrymen. This fact is also clearly proved, and, indeed, is not disputed. The defendant became incorporated under section 1 of the act to provide for the incorporation of religious societies, passed April 5, 1813 (3 R. S. 687). This act requires that there shall be annually elected two wardens and .eight vestrymen, and makes them, together with the rector, if there be One, the.trustees of the corporation. It contains a suitable provision for the filling of vacancies in the offices of wardens and vestrymen. Then comes the provision that no board of trustees shall be competent to transact any business, unless the rector, if there be one, and at least one of the churchwardens and a majority of the vestrymen be present. This language appears to me to be too plain to admit of a question respecting the number of vestrymen required to constitute a valid meeting. There must be “at least a majority,” i. e., five of them, present.
The case show's that there were three vacancies in the body of vestrymen. Upon this fact the plaintiff contends that a legal quorum were present. His argument is that the statute only requires a majority of vestrymen actually in office. I cannot assent to that construction. I think it is not warranted by the w'ords of the statute, and is repugnant to its object and intent. The language employed is emphatic. There must be at least a majority of the vestrymen. That evidently means a majority of the number which the statute requires to compose the board of trustees, not of the number to which, honestly or otherwise, by design or by accident, the body of the vestrymen may *55 have been reduced. The construction suggested by the plaintiff would tend to frustrate the purposes of the statute, and might end in devolving the authority and duties of eight vestrymen upon a single one. It would certainly open a door for fraudulent and collusive resignations, and discourage the performance of the duty' of filling vacancies. In this way the safeguard provided for a due administration of the affairs of the corporation and for the prevention of abuses of the powers vested in the corporate body might be effectually destroyed.
The plaintiff cited two cases to sustain the position taken by him (Wardens, &c. v. Pope, 8 Gray, 140 ; Beck v. Hanscom, 9 Fos. 213). Neither of them are applicable. In the former the court merely held, there being no statutory requirement on the subject, that the vestry might transact business in the absence of the wardens, if a majority of all the members were present, notwithstanding it had been voted at several annual meetings that one warden and four vestrymen should constitute a quorum, the quorum thus created being in fact less than a majority of the members of the vestry. In the latter, a municipal charter provided for a joint meeting of the city council, composed of two separate boards, and made a majority of each board a quorum. It was held that where one of the boards had agreed upon a day for meeting in convention, it was not necessary that a majority of them should be present in order to make the proceedings valid, the number present being a majority of both boards. All that these cases decide is that a majority legally convened is competent to do the act.
The rule of the common law on this subject is well settled, and has been repeatedly recognized and approved by the courts of this State. It is stated by Lord Kenyon in Rex v. Miller, 6 T. R. 268, “ Where there is a definite body in a corporation, a majority of that *56 definite body must not only exist at the time when any act is to be done by them, but a majority of that body must attend the assembly where such act is to be done. ” (See also Rex v. Varlo, Cowp. 248 ; Rex v. Morris, 4 East, 17 ; Rex v. Devonshire, 1 Barn. &C. 609 ; Bailiffs v. Phillips, 4 A. & E. 550 ; Exp. Wilcox, 7 Con. 402; Field v. Field, 9 Wend. 398; People v. Walker, 23 Barb. 304-308 ; Id. 606). This general rule of the common law is substantially declared in the revised statutes (2 R. S. 555, § 27). I am, therefore, of opinion that the meeting under consideration was not competent to authorize the execution of the bond and mortgage.
It is said that the defendant is estopped by the petition for leave to mortgage, and the order made thereon.
Upon this subject it is sufficient to say that no estoppel was created by those proceedings, for the reason that all the authority for them rests solely upon an implication arising from the resolution aforesaid, which, as we have seen, was of no effect.
The trustees who caused the application to be made were not general but special agents; and to render their acts in that respect binding on the corporation, an express authority was requisite. No authority besides the resolution has been shown, and none can be presumed. The transaction has never been ratified, but on the contrary was promptly repudiated.
The complaint must be dismissed, but without costs, and without prejudice to any suit or proceeding to enforce payment of any debt which may be due from the defendant.
Note on Ultra Vires.
[For the following very clear analysis of the leading authorities on this subject, I am indebted to the argument of Wm. R. Martin, Esq., in Madison Ave. Baptist Ch. v. Baptist Ch. in Oliver St., Court of Appeals, February, 1878.]
*57 Confusion has arisen in questions of ultra vires from an undefined use of the expressions, ultra vires, extra vires, malum in se, malum prohibitum, illegal, unlawful, etc. These questions have been, whether and in what cases the contracts and acts of this character by corporations shall be enforced ; and if not enforced, what equitable relief may be granted to the party against whom the contract or act is so characterized.
A leading discussion of wide range over the whole subject is found in this State in Bissell v. Mich. So. R. Co., 22 N. Y. 258, followed by a note to Buffett v. Troy & Boston R. Co., 40 Id. 179, and a similar one in England, in Taylor v. Chichester & M. R. Co., L. R. 2 Exch. 356. The English rule was settled by the House of Lords, on appeal in that case (39 L. J. Exch. 217, and L. R. 4 H. L. 628), followed in Ashbury R. Co. v. Riche, L. R. 7 H. L. 653.
Brice (Ultra Vires, 2 Ed. 59), states that “the result of the English authorities is, that corporations have by implication, all capacities and powers, which being reasonably incidental to their enterprise or operations, are not forbidden them, either expressly by their constating instruments, or by necessary implication therefrom.”
In this country there has been more diversity; and it has been considered that they possess only those powers expressly conferred, or necessarily required for their enterprise and operations.
The reconciliation of these diversities, and the true principle, may be found in the following classification.
The English rule is that every ultra vires act and contract is void, and shall not be enforced ; but they do not include the first class as ultra vires.
In this country the rule includes the first and second of the below mentioned classes as ultra vires, but we enforce the first, and not the second class. This reconciles the cases. Both alike refuse to enforce the cases included in the second' class ; and the grounds on which they refuse to enforce them are the same as those on which they refuse to enforce such contracts when made by individuals.
In this country a distinction is drawn between executory and executed contracts, (63 N. Y. 70), including those wholly or partly performed as executed (57 Id. 530).
In cases where the contracts are not enforced, both countries agree in this, that the party pleading ultra vires, shall account for the benefits received, and in such account the general equitable rules apply according to the facts of each case.
This is done in contracts of the second class, where the other party is not in pari delicto (14 N. Y. 162 ; 57 Id. 518).
*58 Classification.
I. Unlawful acts or contacts—those not wa/rramted or authorized by law, expressly, or by necessary implication, but such as an individual would be liable for.
1. Those which are beyond their powers.
Farmers L. and T. Co. v. Clowes, 3 N. Y. 470.
An executed contract, in excess of the express powers of the plaintiff, was enforced.
Farmers L. and T. Co. v. Curtis, 7 N. Y. 466.
A purchase of land by plaintiff not within the express powers granted to it, was upheld as valid.
Curtis v. Leavitt, 15 N. Y. 9.
Obligations issued in excess of powers, but incidental thereto, and not prohibited, were held valid.
City Bank of Columbus v. Bruce, 17 N. Y. 507.
A bank purchased its own stock, which was not prohibited. It sold the stock, and payment of the note given on the sale was enforced.
Parish v. Wheeler, 22 N. Y. 496.
A railroad company purchased boats in excess of its express powers. The contract was executed, and it was enforced.
Olcott v. Tioga R. Co., 27 N. Y. 546.
Payment of a note given for the purchase of a locomotive to be used on its own and another road, was enforced. The power, though not expressed, was implied from the grant.
Milhau v. Sharp, 27 N. Y. 611.
The city of New York has no power to grant a franchise, and its contract therefor, not performed, was held void.
Clarke v. City of Rochester, 28 N. Y. 605.
The city made a contract in respect to railroad stock in excess of the authority given by law. It was enforced.
Hope Mutual Life Ins Co. v. Perkins, 38 N. Y. 404; S. C., more fully, 2 Abb. Dec. 383.
The plaintiff made a contract to procure sureties ; the contract was enforced.
Whitney Arms Co. v. Barlow, 63 N. Y. 62.
An arms company made and sold locks. The contract had been executed and was enforced.
Meech v. City of Buffalo, 29 N. Y. 198.
Mumford v. Am. L. &. J. Co., 4 Id. 463.
*59 Schermerhorn v. Talman, 14 Id. 93.
DeRuyter v. St. Pet. Ch., 3 Id. 238.
Moss v. Averell, 10 Id. 449.
Sackett’s Har. Bk. v. Codd, 18 Id. 240.
Acts and contracts sustained because they were not prohibited.
Sherwood v. Am. Bib. So., 4 Abb. Ct. App. Dec. 227.
The defendant allowed to take property by bequest which it was not expressly authorized to take, but not prohibited.
In cases other than contract, when a corporation exercises the right of eminent domain or taxation, express authority must be shown.
Riley v. City of Rochester, 9 N. Y. 64.
The city had no power to acquire title .to land beyond its boundaries.
N. Y. &. Har. R. Co. v. Kip, 46 N. Y. 546.
The acquisition of land by the plaintiff was upheld on the ground that the purpose was within the powers expressly granted.
Matter of Bost. & Alb. R. Co., 53 N. Y. 574.
A railroad company could not acquire title to land in a park, because power to do so was not granted by law, expressly or by implication.
Re Second Ave. M. Ch., 66 N. Y. 395.
The city of New York could not impose an assessment on church property.
[Compare the Elevated Railroad Cases, 3 Abb. Aew Cas. 301.]
See also Oil Creek, & A. R. Co. v. Penn. Trans. Co., 83 Penn. St. 160; State B. Agricul. v. Citizen’s S. R. Co., 47 Ind. 407; Bradley v. Ballard, 55 Ill. 413. These are leading cases in those States.
2. Those which in corporate managements were within their general purposes and scope, but outside of their powers.
Hoyt v. Thompson, 19 N. Y. 208.
An assignment of a mortgage, not made in the mode authorized by the charter, was held valid.
Hooker v. Eagle Bank, 30 N. Y. 83.
A contract with architects, not made in the required form, had been executed, and was enforced.
Phillips v. Campbell, 43 N. Y. 271.
An executed sale, not made in the mode authorized, was sustained as valid.
Titus v. G. W. Turnpike R., 61 N. Y. 237.
Spurious certificates of stock. Contract was executed and enforced.
*60 Ogdensburgh R. Co. v. Wooley, 3 Abb. Ct. App. Dec. 398.
The plaintiff’s contract with a subscriber for the payment for his stock, in a mode not prohibited, was enforced.
H. Illegal acts or contracts, such as an individual should not do— mala in se, mala prohibita—breach of trust, forbidden by law and against public policy.
I. Torts, frauds and crimes.
Bissell v. Mich. So. R. Co., 22 N. Y. 258.
Buffett v. Troy & B. R. Co., 40 Id. 168.
\ The defendants contracted to carry a passenger beyond the limits of their charters, and were held liable for injuries to him from negligence.
N. Y. & N. H. R. Co. v. Schuyler, 34 N, Y. 30.
Spurious stock in excess of its capital was void, and the plaintiff was held liable for its wrongful acts and omissions.
2. Violations of settled rules of law, as-breach of contract, breach of trust.
Coleman v. Second Ave. R. Co., 38 N. Y. 201.
The company contracted with their directors as individuals, and it was held void. No equitable-relief was asked.
Bliss v. Matteson, 45 N. Y. 22.
The contract of a corporation made in breach of trust was held void.
Jones v. Terre Haute, &c. R. R. Co., 57 N. Y. 196.
In the absence of power conferred by statute,, a corporation cannot discriminate between its stpckholders, and declare a dividend to some, from which others are excluded.
Knowlton v. C. & E. Spring Co., 57 N. Y. 518.
Contract between corporation and one of its trustees. Executed, but not enforced, and no relief.
3. Those not otherwise objectionable, but forbidden by statute, expressly or by necessary implication.
N. Y. Life Ins. Co. v. Beebe, 7 N. Y. 364.
Certificates of deposit were issued as loans. They were prohibited by statute, and adjudged void.
Tracy v. Tallmage, 14 N. Y. 162.
The corporation made a purchase on time notes, from issuing which it was prohibited. It was executed. It was not enforced, but the other party, not being in pari delicto, had equitable relief.
*61 Curtis v. Leavitt, 15 N. Y. 9.
Obligations prohibited were void, but the lenders recovered back their money.
Robinson v. Bank of Attica, 21 N. Y. 406.
The contract was held to be void because prohibited.
Butterworth v. O’Brien, 28 N. Y. 375.
A bank prohibited from the defense of usury, could not recover back the usury they had paid.
Tyng v. Com. Warehouse Co., 58 N. Y. 308.
A provision in the defendants’ charter authorizing them to receive interest and usual commissions, did not allow them in that guise to take a rate of interest prohibited by the usury laws.
4. Those against public policy (Story Eg. Jur., § 260-308).
Smith v. City of Albany, 61 N. Y. 444.
The defendant made a contract with a member of its common council. It was against public policy and void.
Driscoll v. West, B. & C. M. Co., 59 N. Y. 105.
A by-law of defendants, unauthorized by statute, gave them a lien on stock for the indebtedness of the stockholder. It was against public policy and void.
The classification is general, for the cases are conflicting. The ■ cases given in illustration are not extended beyond a portion of those decided in the court of appeals. Others can be found in Field on Corporations, §§ 357-368, and notes; Abbott’s Dig. of Corporations, &c.