WILLIAM M. FURLONG, Appellant, *v.* JAMES JOHNSTON, Respondent. (Action No. 1.)

Fourth Department, May 7, 1924.

Corporations — subscription for stock — action by purchaser from corporation of promissory note given by maker who was financially responsible in part payment on stock subscription — subscriber's liability fixed without tender of certificate — Stock Corporation Law of 1909, § 55( now Stock Corporation Law of 1923, § 69), not applicable to reissued stock — subscription was apparently for reissued stock — note is valid in hands of plaintiff who paid value in good faith but with notice — Stock Corporation Law of 1909, § 55 (now Stock Corporation Law of 1923, § 69), does not invalidate note under circumstances.

In an action by a purchaser from a corporation of a promissory note given by the maker, who was financially responsible, in part payment on a stock subscription, it is not a defense that the certificates of stock were never issued to the subscriber, for the corporation is not obliged to tender certificates to fix a subscriber's liability on a subscription note.

Section 55 of the Stock Corporation Law of 1909 (now section 69 of the Stock Corporation Law of 1923), which provides that no corporation shall issue stock

except for money, labor done or property actually received for the use and lawful purposes of the corporation, does not prevent a recovery on a note given by the subscriber in part payment for the stock where the subscription is not for the original issue of stock but for stock which has been issued and reacquired by the corporation, and the record in this case indicates that the subscription was not for unissued stock.

But, assuming that the stock for which the note in question was given in part payment was the original issue, said section 55 of the Stock Corporation Law of 1909 does not prevent a recovery by the plaintiff, for a note given by a person financially responsible in part payment of a subscription for stock not issued and delivered becomes a valid instrument in the hands of the person who has, with notice but in good faith, paid the corporation value therefor, and thereby has furnished assets on the credit of the subscription; under these circumstances the maker of a note will be prevented by sound public policy and plain rules of good faith from escaping liability.

SEARS and CROUCH, JJ., dissent.

APPEAL by the plaintiff, William M. Furlong, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Monroe on the 27th day of March, 1923, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying the plaintiff's motion for a new trial made upon the minutes.

*Edwin C. Redfern*, for the appellant.

*Decker & Menzie* [*George P. Decker* of counsel], for the respondent.

DAVIS, J.:

About March 12, 1918, the Empire State Motor Transportation Lines, Inc., was incorporated. Its authorized capital stock was 3,000 shares of $100 each, of which 1,502 shares were then subscribed. Soon thereafter the plaintiff and defendant subscribed for capital stock. From about April first to April twentieth defendant made three subscriptions aggregating $5,000. He paid $1,000 in cash, gave a note for $2,000 which was discounted at a bank, and subsequently gave notes for $2,000 payable to the corporation six months after date, with the understanding that they were not to be cashed at the bank. Soon after its date plaintiff, with the knowledge that it was given for stock, purchased for $900 the $1,000 note here sued upon. Defendant knew the note was to be sold.

None of the notes was paid at maturity, but defendant gave the corporation checks to pay the interest due on them. The certificates of stock were never issued and delivered to defendant, and evidently he never called for them. It does not appear whether there was an agreement that the certificates should be withheld until the notes were paid. The company was not obliged to tender the certificates to fix defendant's liability on his subscription note.

(*Wheeler* v. *Millar*, 90 N. Y. 353; *Jefferson County Savings Bank* v. *Compton*, 192 Ala. 16; 68 So. Rep. 261; 14 C. J. 550.)

The corporation after a brief period of existence went into bankruptcy. Plaintiff sued defendant on the note. The issue was submitted to the jury under a charge which stated, in substance, that if the note was given in payment of a subscription for stock, it was an illegal transaction; and if the plaintiff knew of the illegality he was not a holder of the note in good faith and could not recover. The learned trial court declined to charge that if the note was given by a man of financial responsibility and the company accepted it and received the proceeds, the note was good in the hands of any party. The jury found for the defendant, and on a motion for a new trial the court in a memorandum held that the note was not property within the statute, and there was no ratification and no estoppel.

It is claimed that the note was void in the hands of plaintiff because taken in violation of sections 53 and 55 of the Stock Corporation Law of 1909,* in effect at that time, and the statute to which I shall hereinafter refer.

On the trial it would seem reliance was had on section 55. It provides that no corporation shall issue stock " except for money, labor done or property actually received for the use and lawful purposes of such corporation." In denying the motion for a new trial the learned court apparently relied also upon the provisions of section 53 providing as to stock not subscribed on incorporation, that " at the time of subscribing, every subscriber, whose subscription is payable in money, shall pay to the directors ten per centum upon the amount subscribed by him in cash, and no such subscription shall be received or taken without such payment."

Whether defendant's subscriptions were for a part of the stock not subscribed at the time the certificate was filed does not appear. His counsel says in his brief that defendant subscribed for 100 shares for which he was to pay $5,000. If the statement is correct, defendant would pay but one-half the par value. That would indicate it was not for unissued stock. This inference is strengthened by proof that when the note was sold there was attached to it as collateral a certificate for twenty shares issued in the name of one Hunt. Here, as once before, we are left uninformed as to material facts which might have a vital effect on the determination of the controversy. (See 204 App. Div. 857.) There is a distinction between stock never issued and that once issued,

---

* Now Stock Corp. Law of 1923, §§ 67, 69. See Laws of 1923, chap. 787, §§ 3, 5, 6.— [REP.

repurchased and again held for sale by the corporation. (*Hartley* v. *Pioneer Iron Works*, 181 N. Y. 73, 77.) The statute does not apply to stock legally reacquired by the corporation. A contract to purchase such stock would be governed by general rules applicable to any contract. (*Lake Superior Iron Co.* v. *Drexel*, 90 N. Y. 87; *Otter* v. *Brevoort Petroleum Co.*, 50 Barb. 247; 14 C. J. 455.)

I think we might be justified in the present state of the record and the absence of clearer proof, in acting on the presumption that the transaction was legal. (*Otter* v. *Brevoort Petroleum Co.*, *supra.*) But for the purpose of considering more important legal principles, I will assume that the stock for which this note was given was the original issue.

It does not necessarily follow that when the law prohibits an act, a contract made in contravention of it may be avoided. The Legislature may impose other penalties than declaring such contract void. (*Harris* v. *Runnels*, 12 How. [U. S.] 79; *Pratt* v. *Short*, 79 N. Y. 437.) There are other penalties imposed here. An officer or director of a corporation who issues stock contrary to law may be punished criminally (Penal Law, §§ 662, 664, subd. 3); and may become personally liable for receiving or discounting a note in payment for an installment due on stock (Stock Corp. Law, § 29);* or in certain corporations for debts incurred while the corporation is doing business before its capital shall have been fully paid. (Id. § 20, as added by Laws of 1912, chap. 351.)† Such liability exists regardless of express statute. (*Holmes* v. *Willard*, 125 N. Y. 75; *Coddington* v. *Canaday*, 157 Ind. 243; *Atwater* v. *Stromberg*, 75 Minn. 277; *Cockrill* v. *Abeles*, 86 Fed. Rep. 505; *Williams* v. *Brewster*, 117 Wis. 370.) The certificate of incorporation may be annulled for such illegal acts. (*State* v. *New Orleans Debenture Redemption Co.*, 51 La. Ann. 1827; *State* v. *Louisiana Debenture Co.*, Id. 1795.)

It is not fully settled in this State just what effect the violation of such statutory provisions has on the contract. The provisions in statutes and in Constitutions relative to the issuance of stock differ somewhat in language in the several jurisdictions, but in general are the same in effect. Generally speaking, a note is personal property, particularly the note of a solvent person, and in many jurisdictions is held valid when given on a subscription for stock. (*Pacific Trust Co.* v. *Dorsey*, 72 Cal. 55; *Meholin* v. *Carlson*, 17 Ida. 742; *Schiller Piano Co.* v. *Hyde*, 39 S. D. 74;

---

*Now Stock Corp. Law of 1923, § 59. See Laws of 1923, chap. 787, §§ 3, 5, 6.— [REP.

† Since amd. by Laws of 1920, chap. 606, and Laws of 1921, chap. 694. Omitted from Stock Corp. Law of 1923.— [REP.

*German Mercantile Co.* v. *Wanner*, 25 N. D. 479; 14 C. J. 439; Cook Corp. [8th ed.] § 20.) In but two foreign jurisdictions, so far as I can discover, has it been held that a note is not property and is void under such circumstances. (*Cope* v. *Pitzer*, [Tex. Civ. App.] 166 S. W. Rep. 447; *Kanaman* v. *Gahagan*, [Tex. Civ. App.] 185 id. 619; *Bank of Commerce* v. *Goolsby*, 129 Ark. 416.)

Such notes are held valid and collectible by receivers of insolvent corporations for the benefit of creditors (*Farmers & Mechanics Bank* v. *Jenks*, 48 Mass. [7 Metc.] 592; *Finnell* v. *Sanford*, 56 Ky. [17 B. Mon.] 748); by persons taking them for value without notice (*Willmarth* v. *Crawford*, 10 Wend. 341; *Ogdensburgh, etc., R. R. Co.* v. *Wooley*, 1 Keyes, 118; *Washer* v. *Smyer*, 109 Tex. 398), and by holders with notice and by the corporation itself. (*Magee* v. *Badger*, 30 Barb. 246; affd., 34 N. Y. 247; *Borough Bank* v. *Lamphear*, 154 App. Div. 177; *Vermont Cent. R. Co.* v. *Clayes*, 21 Vt. 30; *Stoddard* v. *Shetucket Foundry Co.*, 34 Conn. 542; *Goodrich* v. *Reynolds, Wilder & Co.*, 31 Ill. 490; *First National Bank* v. *Fulton*, 156 Iowa, 734), although sometimes resort is had to circuity of action. (*First National Bank* v. *Cornell*, 8 App. Div. 427.) (See, also, Cook Corp. [8th ed.] § 20; Fletcher Cyc. Corp. § 3513.)

The note so taken is regarded as another form of subscription or new promise, and an extension of credit by the corporation to the subscriber. (Cook Corp., *supra;* Fletcher Cyc. Corp., *supra.*) At common law it was not illegal to give credit for stock issued. (*Wheeler* v. *Millar*, *supra;* 14 C. J. 439.) If prohibited now, it is not because it is *malum in se.* (*First National Bank* v. *Cornell*, *supra.*) At best the note would not be wholly void but voidable only. (*Weeks* v. *Bridgman*, 159 U. S. 541, 547.) A contract made in violation of positive law (*Wadsworth* v. *Board of Supervisors*, 217 N. Y. 484), or which is contrary to public policy (*Teal* v. *Walker*, 111 U. S. 242, 252), is wholly void and not enforcible by any person.

The object of the statute and the result to be obtained are that the corporation shall become vested with assets so that strangers dealing with it, and stockholders, may be protected. (*First National Bank* v. *Fulton*, *supra.*) Although the statute may use the word " cash," the form of the payment, either the ten per centum on subscription or the whole amount, is unimportant. An equivalent is sufficient. (*Matter of Staten Island R. T. R. R. Co.*, 37 Hun, 422; affd., 101 N. Y. 636; S. C., 38 Hun, 381; *Rodgers* v. *Kerbaugh, Inc.*, 190 N. Y. Supp. 245; *Lee* v. *Cutrer*, 96 Miss. 355; 51 So. Rep. 808; *People* v. *Stockton & V. R. Co.*, 45 Cal. 306.)

It is likely that under modern business methods actual cash is rarely delivered in payment for stock. A check given is regarded as the representation of money. (*Gould* v. *Town of Oneonta*,

71 N. Y. 298, 307; *Syracuse, Phœnix & O. R. R. Co.* v. *Gere,* 4 Hun, 392; 14 C. J. 439.)   Checks given in bad faith or under some conditional agreement, will not confirm a subscription and constitute a payment (*Crocker* v. *Crane,* 21 Wend. 211; *Excelsior Grain Binder Co.* v. *Stayner,* 25 Hun, 91; *Durant* v. *Abendroth,* 69 N. Y. 148); nor will an executory agreement to render services in the future be deemed payment on a subscription. (*Stevens* v. *Episcopal Church History Co.,* 140 App. Div. 570; *Shaw* v. *Ansaldi Co., Inc.,* 178 id. 589.)

The failure to pay at the time of subscribing does not necessarily release the subscriber from obligation.   In *Jeffery* v. *Selwyn* (220 N. Y. 77, 82) it is said:   " Subscriptions not accompanied by immediate cash payments have not, however, been held void. A subsequent payment will suffice, even though it is made through the medium of services rendered the corporation.   (*Beach* v. *Smith,* 30 N. Y. 116.)   The statute* does not prohibit or forbid any other mode of subscription, and this court said in *Buffalo & J. R. R. Co.* v. *Gifford* (87 N. Y. 294, 300) that ' We are inclined to the opinion that it was not intended by this section† to prescribe a fixed statutory mode of making a subscription, and that any contract of subscription, good and valid at common law is still valid, notwithstanding this section.' "

To the same effect, that subsequent payment on account will validate a subscription, see *Black River & Utica R. R. Co.* v. *Clarke* (25 N. Y. 208), even though not made voluntarily.   (*Ogdensburgh, etc., R. R. Co.* v. *Wooley, supra.*)

A mere promise or conditional agreement to subscribe for capital stock has been held void. (*General Electric Co.* v. *Wightman,* 3 App. Div. 118.)   It may be that as between the corporation and the subscriber for original shares, there being nothing but a bare subscription without the equivalent of a cash payment, the subscription agreement is void (*New York & Oswego M. R. R. Co.* v. *Van Horn,* 57 N. Y. 473; *Van Schaick* v. *Mackin,* 129 App. Div. 335); and that the giving of a note for the purchase of the original issue of stock is not equivalent to a cash payment of ten per cent, and as between the corporation and the subscriber collection of the note may not be enforced.   (*Hapgoods* v. *Lusch, No. 1,* 123 App. Div. 23.)   If this rule shall become fully adopted by the court of last resort in this State, it will be in conflict with the weight of authority in other jurisdictions, as I have heretofore pointed out.

A note of no value or of doubtful value would not constitute

---

* See Stock Corp. Law of 1909, § 53.— [Rep.

† See Laws of 1850, chap. 140, § 4.— [Rep.

assets, but in this case the maker was responsible. It may be that the defendant had from the outset an evil purpose in his mind that he would do an illegal act in subscribing for the stock, to wit, that he would pay the note and claim the stock if the venture was successful, but deny liability and repudiate his agreement because of illegality if it was unsuccessful. If so, the plaintiff was not a party to the scheme, but by purchasing the note he gave the defendant's subscription vitality and effect, and furnished capital to the corporation to aid in its success. He was not *in pari delicto* with defendant, and it is difficult to see how he is a wrongdoer. There was nothing illegal or immoral in plaintiff's act. (*Ramsay* v. *Crevlin*, 254 Fed. Rep. 813, 817.) In giving the note defendant authorized the corporation to obtain money on his credit. (*Ogdensburgh, etc., R. R. Co.* v. *Wooley, supra*, 132.) Defendant cannot well complain if the plaintiff paid but $900 for the $1,000 note. That is a question that concerns the creditors and stockholders of the corporation, and for which the officers and directors may be held responsible. Where parties are in equal fault in the violation of law or a rule of public policy, the law will deny relief to either one seeking it. (*Saratoga County Bank* v. *King*, 44 N. Y. 87.) Not so, however, where the one seeking the remedy is not the wrongdoer, and the denial of relief would benefit the guilty party at the expense of the innocent. (*Tracy* v. *Talmage*, 14 N. Y. 162; *Irwin* v. *Curie*, 171 id. 409.)

Lord MANSFIELD said: " The objection that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of a defendant. It is not for his sake, however, that the objection is ever allowed, but it is founded on general principles of policy, which the defendant has the advantage of, contrary to the real justice as between him and the plaintiff."

These " general principles of policy " are not to be invoked for those in the position of this defendant. While there is some hesitation in our courts in calling the doctrine " estoppel " on the ground that both parties are equally informed of the facts (*Shapley* v. *Abbott*, 42 N. Y. 443; *New York & Oswego M. R. R. Co.* v. *Van Horn, supra*, 476), the principle is recognized without definite classification. (*Jeffery* v. *Selwyn, supra*, 83, 84.) In other jurisdictions it is held that the maker of such a note is estopped from asserting its illegality as a defense. (*Farmers & Mechanics Bank* v. *Jenks, supra; Finnell* v. *Sanford, supra; Little* v. *Obrien*, 9 Mass. 423; *Clark* v. *Farrington*, 11 Wis. 306; *Canal Bank* v. *Holland*, 5 La. Ann. 363; *Pine River Bank* v. *Hodsdon*, 46 N. H. 114.) It matters little what name is given the doctrine.

The note was given, defendant paid interest on it, and the cor-

poration of which the defendant was a stockholder had the benefit of the money contributed. It is too late for the defendant to say he made no bargain. (*Borough Bank* v. *Lamphear, supra; Rouse, Hazard & Co.* v. *Detroit Cycle Co.*, 111 Mich. 251; *Ramsay* v. *Crevlin, supra.*)

I reach the following conclusions: (1) That a note given by a person financially responsible in payment for a subscription for stock not issued and delivered, becomes a valid instrument in the hands of a person who has, with notice but in good faith, paid the corporation value therefor, and thereby has furnished assets on the credit of the subscription. (*Ramsay* v. *Crevlin, supra.*) If the officers or directors have sold the note for less than its face, they are personally liable to the corporation or its creditors and stockholders for the balance. (Stock Corp. Law, § 29.) (2) That under these circumstances, the maker of the note would be prevented by "sound public policy and the plain rules of good faith" from escaping liability. (*Jeffery* v. *Selwyn, supra.*)

The judgment appealed from should be reversed; and under the provisions of section 584 of the Civil Practice Act, there being no valid defense, the plaintiff should have judgment on his motion for the direction of a verdict in his favor for the amount of the note and interest, with costs.

All concur, except SEARS and CROUCH, JJ., who dissent and vote for affirmance.

Judgment and order reversed on the law, with costs, and judgment directed for the plaintiff upon his motion, with costs.