Edward G. Baker, J.
The unfortunate controversy which is the basis of this action has lead to bitterness and discord among the members of the congregation and among those charged with the duty of administering the business of the church. The intensity of the dispute has resulted in undignified and unseemly conduct within and about the place of worship. There seems to be no room for compromise, no common ground upon which the disputants can meet.
This court may not be concerned with the underlying reasons for the differences between the contending factions, or with questions of policy or philosophy of one or the other of them. There are presented here comparatively simple questions of law. They must and will be resolved objectively.
Plaintiffs seek judgment declaring the rights and legal relations of the parties, injunctive and other relief. This motion is for an injunction pendente lite restraining defendants, their agents etc., from entering upon church property, or in any way attempting to conduct religious services therein, from assuming or exercising any dominion or control over said church or any of its property, or from interfering with the property, funds and management of the church, or from retaining possession of the parish register and other records of the church.
A meeting of the vestry of the church was called for February 6,1956. There were present two churchwardens and four vestrymen. At that meeting the following resolution was adopted: “ Resolved, that in accordance with the Canons of the General Convention and the Diocese of Long Island, it be made known, in writing, to the Ecclesiastical Authority that it is proposed to elect The Reverend Herman S. Sidener, Presbyter, as Rector of this Parish.”
Thereafter, the Bishop of the diocese in which the church is situated was notified of the action of the vestry and his approval of the nomination of Rev. Sidener was requested. That approval *935 was given by way of a letter addressed by the Bishop to one of the churchwardens which stated among other things: “ Acting upon the advice of my Chancellor as to the regularity of the proceedings, I give my approval to the election of The Rev. Herman S. Sidener, Chaplain of The Cathedral School of St. Paul, Garden City, New York.”
At a meeting of the vestry held on February 7,1956, a resolution was adopted electing Rev. Sidener rector of the parish, fixing his annual salary and providing for him other allowances. There were present at this meeting two churchwardens and four vestrymen.
Following said meeting and pursuant to certain requirements of the Canons of the Protestant Episcopal Church in the Hnited States of America, and of the Diocese of Long Island, the church wardens executed and forwarded to the Bishop a document known as an “ instrument of presentation ” which is in substance a request that Rev. Sidener be admitted to the parish and that he be instituted and inducted as the rector of the church. Rev. Sidener was thereafter advised of his election as rector and he accepted the office by letter dated February 8,1956. Having received the instrument of presentation and notification of Rev. Sidener’s acceptance, the Bishop, in accordance with the requirements of the canons caused same to be filed with the secretary of the convention in the diocese.
Subsequent to the election of Rev. Sidener pursuant to the procedure outlined above, and on February 14, 1956, a meeting of the vestry was held at which two vacancies in the office of vestryman were filled, and the following resolution adopted: ‘ ‘ Resolved, that The Reverend Herman S. Sidener having been duly elected Rector of this Parish and said election having been canonically finalized the Wardens are directed to notify the Reverend William Howard Melish that his employment under the resolution heretofore adopted by the Vestry on March 19, 1951, has ceased and terminated and that he be directed to cease and desist from any participation in the worship and spiritual jurisdiction of the Parish and the use and control of the church and parish buildings with the appurtenances and furniture thereof. ’ ’
The resolution of March 19, 1951, referred to in the resolution adopted at the February 14th meeting, was as follows :“On motion regularly seconded and carried, the Vestry authorized the maintenance of regular services until a new rector shall have been elected and installed and that the Assistant Minister, the Reverend William Howard Melish, be asked to continue performing the round of duties for which he has been responsible, *936 until such election shall have taken place and shall have been canonically finalized. ’ ’
The charter of the church provided for a vestry to consist of two churchwardens and nine vestrymen. At the time of the meetings of February 6th and 7th, there were two vacancies in the office of vestryman. There was no rector. The three vestrymen named herein as defendants absented themselves from said meetings which were attended, as stated above, by the two churchwardens and four vestrymen. Attendance of one or more of the absent vestrymen could have been compelled (People ex rel. Kenney v. Winans, 9 N. Y. S. 249). No effort to compel attendance was made.
No question is raised as to the regularity of the canonical procedure followed with respect to the election of Rev. Sidener as rector of the church. It is contended, however, that the necessary initial step in the process of calling a rector, namely, the formal vote of the vestry, was a corporate act governed by civil law; and, since no quorum was present as required by section 42 of the Religious Corporations Law, those present at the aforesaid meetings were incompetent to act.
Section 42 of the Religious Corporations Law provides, among other things, as followsTo constitute a quorum of the vestry or board of trustees, there must be present either: 1. The rector and at least a majority of the whole number of wardens and vestrymen, or 2. One churchwarden and one more than a majority of the vestrymen or both churchwardens and a majority of the vestrymen, or 3. If the rector be absent from the diocese and shall have been so absent for over four calendar months, or if the meeting be called by the rector and he be absent therefrom or be incapable of acting, one churchwarden and a majority of the vestrymen, or both churchwardens and one less than a majority of the vestrymen.” (Emphasis supplied.)
It seems clear that neither subdivision 1 nor 3 has application here, and that the question of “ quorum ” must be determined by reference to subdivision 2 of the statute. Thus, to constitute a quorum under the statute, it was necessary that there be present at the meetings aforesaid, in addition to the two churchwardens, a “ majority of the vestrymen”; and the majority required was a majority of the number provided for in the charter of the church (Moore v. St. Thomas Church, 4 Abb. N. C. 51) and not a majority of those who were in office at the time the meetings were held. There was no quorum present at the meetings mentioned.
As defendants contend, there are two steps involved in the calling of a rector in the Protestant Episcopal Church. The *937 initial step is election by the vestry and this is governed by section 42 of the Religions Corporations Law (Ackley v. Irwin, 71 Misc. 239). The second step is governed by canonical law (Canon 47 of the Canons for the Government of the Protestant Episcopal Church in the United States of America, adopted in general conventions, 1789-1955). There having been no quorum at the meetings of February 6th and 7th, the actions there taken were a nullity and the subsequent proceedings, although regular, were ineffectual to validate Rev. Sidener’s election. It should be borne in mind that article 3 of the statute, which includes section 42 thereof, relates specifically and only to Protestant Episcopal parishes or churches.
The court has considered section 25 of the Religious Corporations Law which provides: “ § 25. Pastoral relation. No provision of this chapter authorizes the calling, settlement, dismissal or removal of a minister, or the fixing or changing of his salary, and a meeting of a church corporation for any such purpose shall be called, held, moderated, conducted, governed and notice of such meeting given and person to preside thereat ascertained and the qualification of voters thereat determined, not as required by any provision of this chapter but only according to the aforesaid laws and regulations, practice, discipline, rules and usages of the religious denomination or ecclesiastical governing body, if any, with which the church corporation is connected. ’ ’
The laws and regulations, etc., of the Holy Trinity Church, having to do with the election of a rector, are found in Canon 23 of the Canons of the Diocese of Long Island. This canon prescribes the procedure for the selection and election of a rector when a parish becomes vacant, and provides for the holding of vestry meetings at which the several steps leading to the election of a rector shall be taken. The canon makes no provision whatever with respect to the manner in which vestry meetings shall be called, nor does it contain any provision as to what shall constitute a quorum of the vestry. But the word ‘ ‘ meeting ’ ’ as used in the canon obviously means a meeting legally called and composed. It seems clear that these matters were intended to be and are governed by the provisions of section 42 of the Religious Corporations Law.
It is comforting to know that, important as this litigation is, and whatever may be its final result, long after those concerned in it have been forgotten people still will be worshiping God in the Church of the Holy Trinity.
Motion denied.