## MAGEE *vs.* BADGER & POTTER.

Under the act of April 1, 1854, authorizing the Buffalo, Corning and New York Rail Road Company to receive subscriptions for preferred stock and to issue such stock to subscribers therefor, and requiring such subscribers to pay the par value of such shares as they are authorized to take, "in such manner as the board of directors should direct at the time of subscribing," the directors had the power to take from a subscriber his promissory note payable in a year, in payment of his subscription for preferred stock.

A note thus given in payment of a subscription for preferred stock, is valid in the hands of the company, or of a third person to whom it is regularly transferred, in part payment of a demand due him from the company.

A second note, given by such subscriber, in settlement of an action brought to recover the amount due upon the original note, is also valid; it having a good consideration, to the amount due upon the first.

A party giving a note, under such circumstances, would not be permitted to set up as a defense to it, the invalidity of the first note ; unless he could ·

Magee *v.* Badger.

show that he was in some way deceived and defrauded in the settlement. *Per* JOHNSON, J.

If the maker is defrauded, and he seeks to repudiate the second note on that ground, he must restore the old note, given up on the settlement, and place the holder in the same situation in which he stood at the time of the settlement.

Where, in an action on a promissory note, the judge charged the jury that if the plaintiff took the note with notice of facts constituting a defense thereto, it would be void in his hands; and further, that if he had knowledge of facts or circumstances which should have prompted further inquiry that might have led to a knowledge of the facts, the note would, for that cause, also, be void; *Held* that the latter clause of the charge went beyond the settled rule of law, in regard to the validity of negotiable paper in the hands of a holder for a valuable consideration.

Where there is but one exception to the refusal of the judge to charge as requested, the party excepting must, in order to sustain the exception, show that every proposition embraced in the request to charge is tenable.

If either proposition is erroneous, the exception falls, although a portion of them were sound in point of law.

MOTION for a new trial, on a case and exceptions. The complaint was upon a promissory note, made on the 28th of January, 1857, by the defendant Badger, whereby, for value received, he promised to pay, six months after the date thereof, $350, with use, to the order of Hiram Potter, at the Steuben County Bank; and the plaintiff alleged that the defendant Potter duly indorsed the said note, and the same was duly transferred and delivered to the plaintiff. That when the said note became due it was duly presented for payment at the Steuben County Bank, and payment thereof was duly demanded, but the same was not paid, whereof due notice was given to the defendant Hiram Potter. And the plaintiff averred that he was still the owner and holder of the said note, and that the defendants were indebted to him upon the same in the sum of $350 besides interest, for which sum, with interest, &c. the plaintiff demanded judgment.

The defendants by their answer admitted the making of the note by the defendant Badger, and the indorsement thereof by the defendent Potter, as stated in the complaint. They also admitted that it was duly presented for payment when due, and

that the same was not paid, and that due notice thereof was given to the defendant Potter as stated in the complaint, and that the plaintiff was the owner and holder of said note. For a further answer to the complaint, the defendants alleged, that on or about July, 1854, the defendant Harvey P. Badger was the owner of nine shares of the capital stock of the Buffalo, Corning and New York Rail Road Company, a rail road corporation duly chartered by the laws of this state. That by an act of the legislature, passed April 1st, 1854, the directors of the said corporation were authorized to increase the capital stock of the company by the addition of not exceeding 4666 shares, of the par value of $100 each; and for the purpose of carrying into effect the provisions of the said act, the directors were authorized to issue the said 4666 shares of new stock in the company, and that such new stock should be called, and should by the provisions of the said act in fact be, preferred stock. And it was further provided in and by the said act, that the holders of the then present stock might subscribe for the new stock, in the proportion of one share for every three shares of old stock held by them, they paying the par value of $100 for such new stock, and on delivering up their certificates of old stock, (the directors having first complied with the requirements contained in the sixth section of the said act,) they should receive in lieu of every three shares of old stock and share of new stock a certificate of four shares of preferred stock; provided that an amount not exceeding one half of such new stock so taken by such stockholder should be required to be paid in by him within three months, and the remaining half should be paid within six months after the acceptance of the said act by the stockholders, as provided for in the 6th section of the said act. It was further provided in and by the 6th section of the said act, that the directors should not issue any of the new stock until the provisions of the act should be accepted by a vote representing at least two thirds of the stockholders of the company, at a stockholders' meeting specially convened for that purpose; as by reference to the

said act entitled " An act to increase the capital stock of the Buffalo, Corning and New York Rail Road Company," passed April 1, 1854, will more fully and at large appear. And the defendants further alleged, that at a stockholders' meeting specially convened for that purpose, held in pursuance of the 6th section of the said act, on or about the ___ day of _____, 1854, the provisions of the said act were duly accepted by a vote representing at least two thirds of all the stock of said company. And that the said Buffalo, Corning and New York Rail Road Company, at the time of the passage of the said act, and at the time of the acceptance of the provisions of the act by the stockholders of the company, and at the time of giving the note hereinafter mentioned, had not constructed that portion of their road between Buffalo and Batavia, and that the completion thereof was essential to the prosperity of the remaining portions of said road, and was of great importance to, and would greatly enhance the value of, the stock of said road. That after the passage of the said act and after the acceptance thereof as aforesaid, one Frederick Davis, jun. who was the secretary and agent of the company, and the plaintiff who was the president of the company, on or about the month of July, 1854, in order to induce the defendant Badger to change his nine shares of stock in the said company into preferred stock, falsely and fraudulently represented to him that the directors of the company were going on immediately to complete their road from Batavia to Buffalo, and that such completion would greatly enhance the value of the stock of said company, and that he, the said Davis, was authorized by the company to take the note of the said defendant, at one year from the date thereof, and change his stock to the new preferred stock of the company. That all the money raised by preferred stock was to be, and by the company should be, applied to the completion of the said road to Buffalo. That the defendant Badger, relying upon such false and fraudulent representations, gave to Davis, as such secretary and agent of the company, his note for $300, payable

in one year from the date thereof, for the shares of the new stock provided for under and by virtue of the said act. That all the representations so made by Davis and the plaintiff were false and fraudulent, and known by them to be so, at the time the same were made. And that the defendant Badger, at the time the said note became due, refused to pay the same. That at that time the defendant Badger was the holder and owner of 87 shares of the stock of said company, 78 of which had not been preferred. That on or about the 28th day of January, 1857, the said Frederick Davis, jun., he still being the secretary and agent of the said company, fraudulently pretending that he was authorized by the company and by law to make the whole of Badger's stock preferred under the said act, undertook and agreed with the said defendant that if he would give his note for $350 in the place of the said note hereinbefore mentioned, payable in six months from date, indorsed by the defendant Hiram Potter, the said company would prefer the whole of the stock of the defendant Badger, and issue to him in lieu of 87 shares of stock, 90 shares of the new preferred stock. That thereupon the defendant, relying upon the truth of such pretense, gave to the said Davis his note for $350, payable six months from the date thereof, and the defendant Potter indorsed the same, and the defendant Badger, at the same time, surrendered to Davis his certificates for his 87 shares of old stock and received from the said Davis, acting as and for the said company, 90 shares of the new preferred stock of the said company. Whereas in truth and in fact the said Davis was not authorized by the company, nor by the law, nor was the said company authorized by law, to issue to the defendant Badger the said 90 shares of preferred stock, all which Davis well knew at the time of taking said note and of issuing said new stock to the defendant Badger; and the said 90 shares are, and were, therefore entirely valueless, in the hands of the defendant Badger. That the said note last mentioned is the same note mentioned and referred to in the complaint in this action. And the defendants further averred, on

information and belief, that the plaintiff in this action was not a bona fide holder of the said note, and that he did not receive the same in the usual course of trade and for value, and that he received the same with a knowledge of all the facts connected with the making thereof, or under such circumstances as in law would charge him with such knowledge.

The action was tried at the Steuben county circuit, in October, 1858. The making of the note being admitted by the pleadings was read in evidence, and there appeared to be due thereon $392.66. *H. P. Badger*, one of the defendants, was sworn as a witness for the defendants, and testified as follows: "I am the maker of the note in question. In July, 1854, I attended a meeting of the stockholders of the Buffalo, Corning and New York R. R. Co. at Leroy. I was a stockholder, and the meeting was with a view to consult in regard to preferring the stock under the law of April 1st, 1854. I gave my note for $300, payable in one year. It is destroyed. It was taken up and destroyed when the note now in suit was given. The note was payable to Davis as the secretary of the company, and as the property of the company. I think it was dated 28th July, 1854. Mr. Magee was present at the meeting when I gave the note. I had a conversation with him at the meeting. I told him that a gentleman who was sitting by me by the name of Bixby would prefer his stock if I would prefer mine. I had 87 shares of the old stock, at $100 per share. I told Magee that I was not able to prefer my stock, and had not thought of doing so. He wanted I should do so and get Bixby to prefer his. I told Magee if the company would give me a year's time, I might prefer a portion of it. He said they would take the note for a year, and wanted me to get Bixby to prefer his. He directed Mr. Davis to draw a note for $300, payable in a year, and I signed it. The note was to prefer nine shares of my stock. I never received my certificate from the company, preferring the nine shares for which that note was given; but understood it was put to my credit on the com-

pany's books. I never received from the company any pre-
ferred stock until the giving of the present note. The note
was made payable to Davis as secretary of the company, and
handed over to him as the property of the company. It was
not paid at maturity. It was sued by Mr. Davis soon after
·it became due. · John .Ostrander was his attorney. I put
in a defense. The action on the note being at issue in
the supreme court, it was referred by an order of the court
to Washington Barnes as sole referee. It was noticed for
hearing. Before the hearing, a meeting of the stockholders
of the company was held at Avon, in December, 1856. At
that meeting I saw Mr. Davis, and we talked about settling
the suit. After it had been stated at the meeting that the
preferred stock would be worth five per cent more than the
old stock, I proposed to settle if he would prefer my whole
stock. Davis told me he could not do it. Davis said he
thought it would be illegal to prefer my whole stock, but said
he would think of it and talk with Mr. Ostrander and let me
know. Some time after that Mr. Ostrander called on me, and·
said Mr. Davis had concluded to do as we had talked; there-
upon Mr. Ostrander and myself settled the suit. The agree-
ment was, that I should surrender up my certificate for the
87 shares of the old·stock and give my note, indorsed by
Hiram Potter, and was to receive 90 shares of the preferred
stock, the suit to be discontinued and my old note given up.
I gave Mr. Ostrander the note now in suit, and my certificates
for the 87 shares of the old stock, for which he was to return
me the 90 shares of preferred stock and my old note, and dis-
continue the suit. A few days after this, I received from Mr.
Davis a certificate of preferred stock." The defendants'
counsel insisted that the note being void in its inception, the
onus of showing that the plaintiff received it in good faith,
in the usual course of trade and for value, was upon the
plaintiff, and that unless this was shown, the plaintiff was
not entitled to recover. The court ruled otherwise, and the
defendants' counsel excepted. *F. Davis,* the secretary of the

company, was examined by defendants, and testified: "The note in suit was taken by me individually, and not as secretary of the company. I negotiated this note to Mr. Magee [the plaintiff] about three months after it was given. I had borrowed of Magee previous to that time about $400, for which he held my note, and as collateral my draft on and accepted by the treasurer of the company, for $500 due me on my salary as secretary. When I let Magee have this note, he indorsed the amount of it on the note he held against me, and gave me up the draft he held as collateral. The draft has since been paid to me. I did not tell Magee any thing about the note; only asked him if it was good. When the first n.:te was given by Badger, I did not issue to him any preferred stock, but I gave him a certificate that when the note was paid he would be entitled to 12 shares of preferred stock. I did this as secretary of the company. The old note was the property of the company. I took the first note on my salary by the consent of Mr. Miller, president, and it was charged to me in my account on the books of the company. I cannot say it was by the act or directions of the directors. I took it, as we took our pay in other things, by the assent of the president. I had sued the old note, and the suit was settled, and this note was taken for the old note with interest and part of the costs of that suit. I think I paid part of the costs myself. The conditional certificate was returned by Badger when the new note was given. I never received any thing for the certificate of 90 shares of preferred stock but the note in suit. The stock was issued after a receiver for the road was appointed. Mr. Miller, the president of the company, was appointed the receiver. The road was insolvent. I was secretary of the company as long as it existed. The first note was not in the hands of Mr. Magee, or the bank. It was never out of my possession. I took it with the knowledge of the president of the road. The suit on that note was settled before the scrip for 90 shares was

issued." Much other testimony was given by the defendants, to substantiate the defense set up in the answer.

The testimony being closed, the defendants' counsel insisted as a matter of law, and requested the court to charge the jury, that the plaintiff was not entitled to recover, because,

1st. The note was void, the company having no right under the law of 1854 to take a note at all for the preferred stock.

2d. The company had no right or authority to take a note payable in a year, for the preferred stock.

3d. The company never, as a matter of fact, issued any preferred stock to the defendant Badger, for the note first given.

4th. The plaintiff was privy to the giving of the first note, and advised and consented to it, he being a director of the company at the time.

5th. The defendant Badger refused to pay the first note, and the plaintiff knew it. He was sued, and defended, and the plaintiff knew it. The note now in suit was given in settlement for, and grew out of, the first note, and the plaintiff knew it, for he advised the settlement and the taking of the new note.

6th. The plaintiff was therefore put upon inquiry, and was in law chargeable with knowledge of the true consideration of the present note.

7th. The present note is void, as being given in fraud of the stockholders and contrary to the provisions of the statute of 1854. It was given in pursuance of a corrupt agreement embracing a fraudulent issue of preferred stock, and is therefore void.

8th. That the plaintiff being a director and officer of the company was chargeable with knowledge of its secretary's act in issuing its stock to Badger, and the circumstances under which it was issued, and the consideration upon which it was issued.

9th. That the plaintiff was not, therefore, a bona fide holder of the note.

The court declined to charge the jury as requested, and the defendants' counsel excepted. The court did charge the jury as follows: That the first note was a valid note. That the

company was authorized by law to take notes for preferred stock, payable in a year or any longer time. To this the defendants' counsel excepted. The court further charged the jury that the second note, the one now in suit, was void as between the parties to it; that the evidence showed that the plaintiff received the last mentioned note before its maturity, and parted with value sufficient at the time, so far as that was concerned, to constitute him a bona fide holder for value. He relinquished the collateral security he held for his debt against Davis, and indorsed the amount of this note upon his note against Davis. To this the defendants' counsel excepted. The court further charged the jury that if the plaintiff had, at the time he purchased and received the note in question of Davis, actual knowledge or notice of the facts which rendered it void in the hands of Davis, it was void in the hands of the plaintiff, and the defendants were entitled to a verdict. The court further charged the jury that if the plaintiff had notice or knowledge of facts or circumstances, such as ought reasonably to have excited the suspicions of a prudent man and led him to make further inquiries which would have disclosed the illegality of the note, he was chargeable with the notice of such illegality and could not recover; that the illegality of the note upon which the plaintiff claimed to recover, consisted in the contract to issue, and the actual issuing, of the $9000 of preferred stock. These were the only facts proved which injuriously affected the validity of the note. To this the defendants' counsel excepted. The court then submitted it to the jury to find from the evidence whether the plaintiff received the note in question with notice or knowledge of such facts; whether, if he had not such notice or knowledge, he had notice or knowledge of facts or circumstances which should have prompted further inquiry, and which would have led to a knowledge of the illegality of the note. In either case the defendants were entitled to a verdict in their favor. The plaintiff knew that the first note had been given, and that Badger had been sued on it, and that the action had been depending

some time, and was referred to a referee. He advised a settlement, by giving time and getting additional security. The action was settled and the present note taken. It is not shown here that any legal defense existed to the first note. To this last the defendants' counsel excepted. If any such defense were shown on the trial to have existed, the plaintiff would have been chargeable with notice of it. But no such evidence had been given, and the question in this connection was, whether there was any fact or circumstance brought to the knowledge of the plaintiff to lead him to suspect the existence of the unlawful transaction between Davis and his attorney Ostrander, and Badger. That the plaintiff denied as a witness that he had any knowledge of it until the answer in this action was served. The jury rendered a verdict in favor of the plaintiff for $392.66.

*Hammond & Ferris,* for the defendants. I. The Buffalo, Corning and New York Rail Road Company had no power under the act of 1854 to receive notes payable in a year, for preferred stock. We insist that the meaning and intent of the proviso of section two is, that " an amount not exceeding one half of the amount of such new stock, shall be required to be paid within three months." We say this because, 1. It is clearly the intenion of the law that *some* portion of " the amount " shall be required to be paid within three months. 2. It is equally clear that the legislature intended to confer on the *company* the *power* to give a credit of three months for one half, and six months for the other half of " the amount," and that this *power* did not, in the view of the framers of the law of 1854, exist before.

II. However bungling the language of the proviso may be, it is evident that the legislature understood the provision to be permissive—an enabling clause rather than one limiting the powers of the company—that is to say, the proviso was intended to *permit* the company to accept of subscriptions payable one half in *three* and one half in *six* months. (1.) Else why

declare that some amount not exceeding one half of the new stock, "*shall be required* to be paid by him within six months?" (2.) Else again, why declare that "the other half *may be* required to be paid within six months."

III. If such is not the true meaning of the act, then the subscriptions are without limitation as to time of payment, excepting only that they shall *not* be payable in less than three and six months, and *may* be payable in one, five, ten, twenty, or a hundred years hence.

IV. For these reasons we say that the first note was taken without authority, and was therefore void.

V. The company had no power to take a subscriber's note in payment of his subscription to the preferred stock, at all. (1.) There is no such power contained in, or conferred by, the charter of the company. (2.) It can take no such power by implication, for such power is not necessary to the carrying out or perfecting any express grant. (3.) The subscriptions are to be cash subscriptions. This is evidenced by the manifest object and purpose of the law of 1854, which was to enable the company to increase its capital stock, in order to complete their road and pay off their debt, and by the fact that no other kind of subscription would accomplish the object. And for the further reason that any other than cash subscriptions, by giving preference to the new stock, would operate as a fraud upon the original stockholders.

VI. The first note being void, and the plaintiff having knowledge of the facts which made it so, and being himself a participator in them, the charge of the judge that "such note was a valid note," and that it "was not shown that any legal defense existed to the first note," was erroneous. The judge held and decided on the trial that if the first note had been invalid, the plaintiff would not have been entitled to recover.

VII. The second note was void. This was conceded by the judge, so far as the parties to it were concerned. We insist that it was void in the hands of the plaintiff, because,

(1.) He was a director in the company at the time the note was given, and Davis was an agent or officer of the company, appointed by the directors, and acted as such in taking the note. (2.) The consideration of the note was the illegal issue by the company; of which the plaintiff was a director, of $9000 of the preferred stock. Such issue being by the legally constituted officer of the company, is the act of the company, and the directors are chargeable with notice of such issue. (3.) The transaction in relation to the issuing of the $9000 of preferred stock, for which this note was given, was entered on the books of the company, by the secretary Davis, and the books were open to the inspection of the directors. It was the duty of the directors to examine them, and the law charges them with notice of their contents. (4.) The fraud, in issuing the $9000 of preferred stock, and taking the note, was the act of the agent of the directors of the company, of whom the plaintiff was one. The power of perpetrating the fraud, and the means of effectuating it, were placed in the hands of such agent by the directors, of whom the plaintiff was one, and under no circumstances can he be permitted to reap the benefits of the fraud. (5.) The plaintiff, in view of these facts, is chargeable with notice of the transaction out of which this note originated, and therefore, whether the first note was void or not, the second one cannot be enforced by the plaintiff.

VIII. The judge erred in refusing to charge the jury as requested by the defendants' counsel.

IX. The charge of the judge is erroneous, in the several portions thereof to which the exceptions are taken.

X. The plaintiff was, at least, so far apprised of the facts in relation to the second note, as to put him upon inquiry as to its legality. Because he knew, (1.) That the defendant Badger refused to pay the first note. (2.) That Badger was sued on that note, and defended that suit. (3.) That the note now in suit grew out of the settlement of the action on the first note, for he advised the settlement and the taking of

Magee *v.* Badger.

a new note. These facts, about which there is no dispute, are sufficient to put him on inquiry as to *how* that action was settled, and how and on what consideration the present note was given. And he is, therefore, chargeable in law with knowledge of the true consideration of the note. In addition to all this, are the further facts before referred to, that Davis was the agent and secretary of the company, and the plaintiff was a director. That the first note was given to the company for preferred stock, with the knowledge and under the advice and direction of the plaintiff.

XI. This transaction throws a little light upon a great mystery that has hung over and dishonored the history of rail road corporations of this country, viz. that directors and officers of these companies invariably grow rich, while those who furnish the means to build the roads grow poor, and the stock disappears into the oblivion that reigns below the financial cipher. Magee, the director, is paid; Davis, the secretary, is paid; the stockholders are plundered of $9000, and Potter plundered of the amount of the note on which his name appears as surety. This wrong ought not to be sanctioned by the courts.

*R. B. Van Valkenburgh,* for the plaintiff. I. The defendants' exception at folio 46, (in respect to the onus of showing that the plaintiff received the note in good faith, &c.) was not well taken. It is only in case the possession of a note is obtained by fraud, or it is fraudulently put into circulation, that the rule insisted on by the defendants applies. In this case the defendants put the note in circulation voluntarily and with full knowledge of all the facts which they set up as a defense.

II. But conceding the exception to be well taken, the defendants afterwards supplied the proof themselves; see evidence of Davis and Magee called out by the defendants. This was a waiver of the exception. (*Vallett* v. *Parker,* 6 *Wend.* 615, 621. *Jackson* v. *Tuttle,* 7 *Cowen,* 364, *and note a.*)

III. It is a rule well settled that when the court is requested to charge a jury on several connected propositions, and an exception is taken to a refusal so to charge, it must fall, unless each proposition is sustained. It is but a single question. (*Haggart* v. *Moryan,* 1 *Selden,* 422. *Jones* v. *Osgood,* 2 *id.* 233. *Van Kirk* v. *Wilds,* 11 *Barb.* 520.) The defendants' 1st and 2d propositions are each of them erroneous. (*See point* 4.) The 4th and 5th and 6th propositions assumed facts, none of which were warranted by the evidence. The most the defendants could ask was that the court should submit the evidence as to the assumed facts to the jury. The court did charge the jury as asked in the 7th proposition, so far as it was legal to do so. The 8th proposition is unfounded, as a legal position, and particularly so after the road, &c. had passed to a receiver, and directors had ceased to meet. The whole of these connected propositions, taken together, amount to asking the court to charge that the note sued on was void; that the plaintiff knew it was void and he was not therefore a bona fide holder of it, nor entitled to recover; or in other words, ordering a verdict for the defendants.

IV. The court was correct in charging that the rail road company was authorized by law to take notes for preferred stock, payable in a year, or any longer time. The act of 1854 provides that the holders of the present stock of said company may subscribe for the new stock in the proportion of one share for every three of old held by them, they paying the par value of $100 for such new stock, "in such manner as the board of directors of said company shall direct, at the time of subscribing," and the directors were bound to give old stockholders three months' time for one half, and six months' time for the other half of the new stock they should subscribe for. (*Sess. Laws of* 1854, *ch.* 146, *p.* 334, § 2.) Badger was owner of 87 shares of old stock, and subscribed for new stock to prefer a portion of his old stock. The 7th section of the act provides only for the sale of the preferred stock to others, not stockholders, after the 1st day of July. There is no limit in

Magee *v.* Badger.

the act as to the time when old stockholders may subscribe for the preferred stock. It gives them the preference until the 1st of July, but does not prevent them from taking it after that time. This same question was decided by Judge Strong, in *Magee* v. *Brooks,* where a bond and mortgage were taken for preferred stock.

V. The court was correct in charging the jury that the evidence showed that the plaintiff received the note before its maturity and parted with value at the time sufficient to constitute him a bona fide holder for value. The evidence referred to is in fols. 47, 48, and there is no conflict or doubt about it. (*Bank of Salina* v. *Babcock,* 21 *Wend.* 499. *Bank of Sandusky* v. *Scoville,* 24 *id.* 115. *Mohawk Bank* v. *Corey,* 1 *Hill,* 513. *Boyd* v. *Cummings,* 17 *N. Y. Rep.* 101. *Story on Bills,* § 192, *n.* 3; § 193, *n.* 1.)

VI. The court was correct in charging that the illegality of the note in suit was the issuing of the $9000 of preferred stock. If the plaintiff's 4th point is correct, then the court was right.

VII. The court charged the jury that the note was void as between the parties to it; that if the plaintiff had actual knowledge of the facts making it void when he took it, it was void in his hands; that if the plaintiff had knowledge of facts or circumstances to raise suspicion, &c., he could not recover, and submitted the proof upon those subjects to the jury in strong language, for the defendants. The defendants got, in these various charges, all and more than they were entitled to in instructions to the jury. The true rule now is, that to defeat the title of a holder of negotiable paper for value, he must be actually guilty of bad faith in acquiring such title. (*Hall* v. *Wilson,* 16 *Barb.* 548, 550.)

*By the Court,* JOHNSON, J. The objection of the defendants to the validity of the first note is two fold: 1. That the company had no power to take a note at all, upon a subscription for preferred stock; and, 2. That if they could take

a note, they had no right to take one payable in one year from the time of such subscription. The act of April 1, 1854, (*Sess. Laws of* 1854, *ch.* 146,) authorizes the company to receive subscriptions for preferred stock, and to issue such stock to subscribers for the same. The subscribers were required to pay the par value of such shares as they were authorized to take, " in such manner as the board of directors of such company should direct, at the time of subscribing." The defendant Badger subscribed for the number of shares he was entitled to as a stockholder, and gave the note on such subscription, at the time. No note was necessary. The subscription was binding, and would have enabled the company to collect the amount subscribed, without any note. But the board of directors were to direct the manner in which the amount should be paid at the time of the subscription, and the promise was reduced to the form of a note. I see no error in this, or any want of power on the part of the company. They were authorized to take the subscriber's promise, and the form in which it was made cannot be material; nor do I see any difficulty in their giving the subscriber a year's credit, if they saw proper to do so, at the time the subscription was made. The act clearly contemplates giving credit to the subscribers. It did not require subscriptions to be paid in cash at the time they were made. There is nothing in the terms or spirit of the act which limited the board of directors to any specific number of days, or months, in the term of credit they might give. I think, therefore, the judge was clearly right in holding that the first note was a valid note, in the hands of the company, it having been given upon an authorized and valid subscription to the preferred stock. Being valid in the hands of the company, it was equally so in the hands of Davis, to whom it was regularly transferred, in part payment of a demand due him from the company. The defendants make no point, that the first note was not regularly transferred to Davis, so as to make him the lawful owner and holder. That note having been a valid note, it is

Magee *v.* Badger.

difficult to see why the note in question, which was given in settlement of the action brought to recover the amount due upon it, is not also a valid note. It certainly had a good consideration, to the amount due upon that note. There was, as we have seen, no valid defense to that note. And even if there had been such defense, it was competent for the defendant to waive it, and settle the controversy by giving a new note, which would be valid, as given in settlement of a disputed claim, and for the purpose of avoiding litigation. A party giving a note under such circumstances, would not be permitted to set up as a defense to it the invalidity of the prior note, unless he could show that he was in some way deceived and defrauded in the settlement. This is alleged here. But from the evidence upon the trial it seems to me very doubtful, to say the least, whether Badger was deceived or defrauded in the least, by the issue to him, by Davis, as secretary of the company, of a greater amount of preferred stock than he was entitled to, or could claim upon his subscription. If he knew he had no right to it, and that Davis had no authority to issue it, and that it would be entirely worthless even if Davis had such power, how can he now claim that he has been deceived or defrauded in the transaction ? But if defrauded, and he should seek to repudiate the note in question on that ground, he must restore the old note given up on the settlement, and place the other party in the same situation in which he stood at the time of the settlement. Many other considerations might be suggested, pertinent to the defense here insisted upon, but it is unnecessary to pursue the subject, as the judge charged the jury that this note was void in the hands of Davis, as against both maker and indorser. Of course the defendants cannot complain of this, and the plaintiff is not here with any exceptions. Assuming, therefore, for the purposes of this motion, that the note in question was voidable in the hands of Davis, on the ground of the fraud in the issue of the preferred stock, had the plaintiff a good title, and could the defendants interpose their defense,

---

Magee *v.* Badger.

---

to the note in his hands ?  He was certainly a holder for a valuable consideration, and took the note before maturity. The judge so charged, and the exception to this part of the charge is not well taken.  The question whether the plaintiff had notice of the facts constituting the defense at the time he took the note, was a question of fact, to be submitted to the jury as it was.  And certainly the defendants have no reason to complain of the manner in which this question was submitted.  The charge was far more favorable to them than they had a right to require.  The judge not only charged, that if the plaintiff took the note with notice of the facts, it would be void in his hands; but he went farther and charged, in substance, that if he had knowledge of facts or circumstances which should have prompted further inquiry that might have led to a knowledge of the facts, the note would for that cause also be void.  This latter branch of the charge went beyond the settled rule of law, in regard to the validity of negotiable paper in the hands of a holder for a valuable consideration.  (*Hall* v. *Wilson*, 16 *Barb.* 548, *and cases there cited.*)  None of the exceptions to the charge are well taken.  There is but a single exception to the refusal to charge as requested ; and in order to sustain that, the defendants' counsel must show that every proposition submitted is tenable.  They were all, as appears by the case—nine in number—submitted at the same time, with a single request to charge in favor of all.  The court refused, and the defendants' counsel excepted.  If either proposition was erroneous the exception falls, although a portion of them were sound in point of law.  (*Haggart* v. *Morgan*, 1 *Seld.* 422.  *Jones* v. *Osgood*, 2 *id.* 233.)  It has been shown above, that several of these propositions were unsound ; and indeed I doubt whether either of them can be upheld, upon the facts appearing on the trial.  A new trial must therefore be denied.

[Monroe General Term, December 5, 1859.  *T. R. Strong, Welles* and *Johnson*, Justices.]