111  251
113  574

111  251
f150  ²192
150  ²193
150  ⁴194

111  251
f156  ¹604

ROUSE, HAZARD & CO. *v.* DETROIT CYCLE CO.

1. PARTNERSHIP ASSOCIATIONS—BY WHAT LAW GOVERNED.

Limited partnership associations, organized and existing under chapter 79 of 1 Howell's Statutes, are governed by the law of corporations, rather than by the law of limited partnerships.

2. SAME—SUBSCRIPTIONS TO STOCK—PAYMENT BY PROMISSORY NOTES—WHEN VALID.

A subscriber to the capital stock of such an association may, with the consent of the other subscribers, pay for the stock subscribed for by him by giving his promissory notes therefor, and such payment renders his stock paid up as against creditors of the association; particularly where the notes are at once converted into money, which is applied for the benefit of the association.

3. SAME—FRAUD—GOOD FAITH—QUESTION FOR JURY.

The good faith of a transaction whereby the stockholders of a limited partnership association, which had become insolvent, gave their promissory notes for the unpaid portions of their subscriptions to the capital stock, and whereby the notes were immediately turned over to the principal creditor, who advanced money to pay certain outstanding indebtedness and arranged to continue the business, is a question for the jury.

4. RECEIVERS—DEFENSES—RES JUDICATA.

The fact that a receiver had been appointed for a limited partnership association prior to the issuance of a *mandamus* to compel the circuit judge to order the production of the books of the association for the purpose of ascertaining the amount of capital stock remaining unpaid, and to cause execution to issue therefor, does not, where there was nothing in the record in the *mandamus* proceedings to indicate that a receiver had been appointed, render the defense that the receiver is entitled to all the assets unavailable, upon the trial, to stockholders who were not made parties to the *mandamus* proceedings, and who had appeared before the court below only to protest against its entertaining jurisdiction over them.

5. SAME—PARTNERSHIP ASSOCIATIONS—CREDITORS—RIGHT TO EX-
ECUTION.

   A creditor of a limited partnership association of which a
   receiver has been appointed is not thereafter entitled to issue
   execution on his judgment against subscribers to stock of the
   association whose subscriptions are not paid up.

Error to Wayne; Frazer, J.    Submitted April 24,
1896.   Decided December 24, 1896.

Proceedings by Rouse, Hazard & Company to obtain
the issuance of execution against Edwin B. Robinson,
John A. Matheson, and John T. Holmes for the unpaid
portions of their subscriptions to the capital stock of the
Detroit Cycle Company, Limited.   From a judgment for
plaintiff on verdict directed by the court, defendants
bring error.   Reversed.

*Atkinson & Atkinson*, for appellant Robinson.

*Malcolm McGregor*, for appellant Matheson.

*Jonathan Palmer, Jr.*, for appellant Holmes.

*Bowen, Douglas & Whiting*, for appellee.

MOORE, J.   Rouse, Hazard & Co., the plaintiff in
these proceedings, recovered a judgment upon November
3, 1894, for the sum of $1,761, damages and costs, in the
Wayne circuit court, against the Detroit Cycle Company,
Limited.   Upon this judgment, execution was issued,
and returned wholly unsatisfied, after being in the hands
of the sheriff of Wayne county for more than 20 days.
The Detroit Cycle Company, Limited, is a limited part-
nership association, organized and existing under chapter
79 of 1 Howell's Annotated Statutes; and the defend-
ants herein, Edwin B. Robinson, John A. Matheson,
and John T. Holmes, were the original subscribing mem-
bers thereof, and remained so during the whole course of
the proceedings in this case.   After the execution was re-
turned unsatisfied, plaintiff applied to the Wayne circuit

court, under the provisions of section 2366, 1 How. Stat., to have ascertained the amount of the subscriptions, respectively, of the defendants to the capital of the Detroit Cycle Company, Limited, not paid up, and for an order that execution issue against said defendants for the amounts so ascertained.   The defendants successfully resisted this application in the circuit court, and thereupon the plaintiff applied to this court for a writ of *mandamus* to require the circuit judge "to compel the Detroit Cycle Company, Limited, and the defendants, to produce the books of the company, especially its subscription list book, showing the names of the members of the association, and the amount of capital remaining to be paid upon their respective subscriptions, and also to receive such other evidence as might be offered by the plaintiff and the members of the association concerning the amount of capital remaining to be paid upon the subscriptions of the respective members of the association, and, after ascertaining the truth in regard thereto, to forthwith order execution to issue against the said members for the amount of their unpaid subscriptions, if any there should be."   The writ was granted after argument in this court, and the case is reported as *Rouse, Hazard & Co.* v. *Donovan,* 104 Mich. 234.

On the filing of the defendants' answers to the plaintiff's application, an issue was framed, and ordered tried before a jury.   The issue was:

"In what amount, if any, are the said John T. Holmes, John A. Matheson, and Edwin B. Robinson, and any or each of them, indebted to the said Detroit Cycle Company, Limited, on account of any unpaid subscriptions to the capital of the said company?"

This issue was tried before the Honorable Robert E. Frazer, circuit judge, with a jury, on April 16, 1895; and, under the charge of the court, the jury found that each of the defendants was indebted to the Detroit Cycle Company, Limited, on account of unpaid subscriptions to the capital stock of the said company, in the sum of $1,833.33.

Certain points of law were reserved by the court for argument after the verdict was rendered; and after an argument of these questions, in accordance with the statute (1 How. Stat. § 2366), and the mandate of this court, an execution was ordered on January 8, 1896, and issued, against each of the defendants, for the amount of $1,833.-33, or so much thereof as might be necessary to satisfy plaintiff's judgment, with costs. This order, and the proceedings upon which the same was based, defendants are now endeavoring to review in this court by writ of error.

The Detroit Cycle Company, Limited, filed its articles in the office of the register of deeds for Wayne county, Mich., as a limited partnership association, under the provisions of chapter 79 of 1 Howell's Annotated Statutes, on November 1, 1892. The defendants were the original members of said association, and subscribed for equal subscriptions, amounting to the sum of $3,333.33 for each defendant. There was paid in by each member thereafter the sum of $1,500, in cash; and there remained still unpaid by each of said members up to about the 6th day of October, 1893, the sum of $1,833.33. On or about October 6, 1893, the association became financially embarrassed, owing the Gormully & Jeffery Manufacturing Company, of Chicago, between $14,000 and $16,000, and owing two local banks in Detroit about $6,000. The debts to the banks were in the form of notes made by the Detroit Cycle Company, Limited, and indorsed by all three of the defendants individually, and were further collaterally secured by an assignment of bicycle contracts. An arrangement was made between the Gormully & Jeffery Manufacturing Company and the defendants, whereby the Gormully & Jeffery Manufacturing Company was given a chattel mortgage on all the property of the Detroit Cycle Company, Limited; and at the same time there were assigned to the Gormully & Jeffery Manufacturing Company all the bicycle contracts, including those held by the banks as collateral security. At the same time, and as a part of the same arrangement, each

of the defendants gave to the Detroit Cycle Company, Limited, his note for $1,833.33, given for the purpose, as each of the defendants testifies, of paying up his subscription to the capital stock of the Detroit Cycle Company, Limited. These notes were immediately indorsed in the name of the Detroit Cycle Company, Limited, by the defendants, and turned over to the Gormully & Jeffery Manufacturing Company as a further security for the indebtedness of the Detroit Cycle Company, Limited, to it. Thereupon the Gormully & Jeffery Manufacturing Company advanced enough money to take up the notes of the Detroit Cycle Company, Limited, in the two local banks in Detroit; and, these notes having been taken up, the collateral security for the same was turned over by the banks to the Gormully & Jeffery Manufacturing Company. These notes were all payable in one year from the date they bore, namely, October 6, 1893, with 6 per cent. interest, and were never paid by the defendants, and were never protested, though they are still outstanding. Immediately after the chattel mortgage was given to the Gormully & Jeffery Manufacturing Company, the latter sent a man to Detroit, to take charge of the business of the Detroit Cycle Company, Limited; and the Gormully & Jeffery Manufacturing Company sent on new goods, and conducted the business.

No amendments of the original articles of association, and no schedule, as provided for in 1 How. Stat. § 2365, or any other paper except the original articles of association, were ever filed in the office of the register of deeds for Wayne county, Mich. It also appeared that in the secretary's records of the minutes of the stockholders' and directors' meetings of the association, running from October 14, 1892, to January 11, 1894, no record anywhere appeared authorizing or making a call for the unpaid subscriptions of the capital stock of the association, or authorizing the receipt of the respective members' notes therefor, although under date of October 6, 1893,

there is a record of a meeting of the directors, and the authorization by them of the execution and delivery of a chattel mortgage to the Gormully & Jeffery Manufacturing Company. The absence of any record of the receipt of the members' notes was explained by the secretary from the fact that he did not enter the minutes of all the meetings in his record, although one of the three members testified that he did not hear of any resolution ·to this effect, but that it was only agreed to between the members.

The defendants requested the court to charge the jury as follows:

"3. It appearing from the undisputed evidence in this proceeding that the defendants gave their promissory notes· to the company for the amount of their unpaid subscriptions, which notes were accepted by the company in payment thereof, and which notes are now in the hands of third parties, and the defendants are liable thereon, the verdict must be for the defendants.

"4. It appearing from the undisputed evidence in this suit that the defendants gave their promissory notes for the amount of their unpaid subscriptions to the company, which notes were taken by the company, and the amount thereof realized in cash, and applied upon existing indebtedness of the company, the making of said notes and realization of the money upon them constituted a payment of said unpaid subscription, and the verdict must be for the defendants."

"If the foregoing are refused—

"6. If the jury believe that the notes in question were given in payment of the unpaid subscriptions, and were accepted by the company as such, and by them transferred to third parties, who now hold them, and the defendants are liable thereon, then the verdict must be for the defendants.

"7. If the jury believe that the notes in question were given for the purpose of paying up the unpaid subscriptions, and the same were taken, and cash realized upon them, which cash was applied in satisfaction of existing indebtedness of the company, so that the company received full benefit thereof, the giving of the notes and the application of the proceeds thereof constituted pay-

ment of the subscriptions, and the verdict must be for the defendants."

The trial judge declined to give these requests. He entertained the view that the statute authorizing the formation of these limited copartnership associations is a special enactment, permitting such organizations with limited liability as to stockholders, and that all the necessary and essential requirements of the statute must be complied with. He held that this had not been done, and that whether the notes had been given and received for the purpose of paying the balance due on subscriptions was not important, and directed a verdict against the defendants.

It is the claim of the plaintiff that the law as applied to limited partnerships is to be applied to associations like the defendant, and that subscriptions to the capital cannot be paid by giving notes. On the part of the defendants it is claimed that the law as applicable to corporations should be applied to these associations, and that if defendants gave their notes to pay for the capital subscribed by them, and these notes were received by the defendant association as payment, and the proceeds of the notes were received by the association, and applied to the payment of its debts, this would constitute a good payment of the capital subscribed, and would release the members from further liability.

Nearly all the questions involved in this proceeding are involved in the case of *Staver & Abbott Manfg. Co.* v. *Blake, post* (decided at the present term of court). It will not be necessary to refer to the opinion in that case further than to say that, as to the question of whether the law of limited partnerships applies to the defendant association, or the law of corporations, the answer is that the case must be controlled by the law applicable to corporations.

We have no doubt that subscriptions to capital stock of corporations may be paid by the giving of promissory

notes, especially if the notes are at once converted into money, and the proceeds applied for the benefit of the corporation. *Goodrich* v. *Reynolds*, 31 Ill. 490 (83 Am. Dec. 240); *Hardy* v. *Merriweather*, 14 Ind. 203; *Stoddard* v. *Foundry Co.*, 34 Conn. 542; *Magee* v. *Badger*, 30 Barb. 246; *Vermont Central R. Co.* v. *Clayes*, 21 Vt. 30; *Pacific Trust Co.* v. *Dorsey*, 72 Cal. 55; *Clark* v. *Farrington*, 11 Wis. 306; *Blunt* v. *Walker*, Id. 349 (78 Am. Dec. 709); *Lyon* v. *Ewings*, 17 Wis. 61; *Andrews* v. *Hart*, Id. 297; *Western Bank of Scotland* v. *Tallman*, Id. 530. It is the claim of the plaintiff that the notes were not given in good faith, and for the purpose of paying up the unpaid portion of the capital. We think the good faith of the transaction was a question for the jury, and that they should have been instructed as requested by counsel for defendants in the sixth and seventh requests to charge.

The record discloses that, upon the application of the plaintiff's attorneys, the circuit court, in chancery, had appointed a receiver for the defendant company, Joseph F. Noera filing the creditor's bill. A judgment creditor's bill was also filed by William A. Hulbert *et al.* against the defendants. John A. Stanbery was appointed receiver in both cases, and claimed the assets of defendant company. Both chancery suits are still pending. The solicitors for the complainants, in their behalf, and in behalf of the receiver in both cases, in open court, waived all claim to any of the unpaid subscriptions to the capital stock of the defendant that were unpaid by Robinson, Matheson, and Holmes, as against the claims of the plaintiff. Objection was made to this offer, and the court replied that he had serious doubt of the power of the receiver to waive the claim, or of the court to grant the waiver, but expressed himself as being settled in relation to the other points in the case. Defendants also introduced in evidence an application for execution under the same statute as is invoked in this proceed-

ing, against the same defendants, for the same unpaid subscriptions, upon a judgment recovered by the W. Bingham Company, plaintiff, against the defendant association, in the circuit court of the United States for the Eastern district of Michigan. The defendants asked to have the following requests to charge given to the jury:

"1. A receiver of all the property and assets of the defendant company having been appointed prior to the judgment in this suit, and being now in office, the plaintiff has no standing in this proceeding, and is not entitled to the order asked.

"2. It appearing that, since judgment was rendered in this suit, a receiver has been appointed in another suit of all the property and assets of the defendant company, the plaintiff has no standing in this suit, and is not entitled to the order asked."

"5. It appearing from the evidence in this case that an application similar to the one in the present case has been made against the defendants in the circuit court of the United States for the Eastern district of Michigan, upon a judgment recovered against the Detroit Cycle Company, Limited, by the W. Bingham Company, the defendants are therefore liable to have execution issued against them in each case for the amount of their subscriptions remaining unpaid, and to be subjected to a double liability not contemplated by the statute under which the defendant association is organized. This being so, the plaintiff's remedy is in equity, where the rights of all parties can be protected, and not by an application for an execution, such as is now pending before the court."

The court refused to give either of these requests. This is assigned as error. It is now urged by counsel for plaintiff that defendants cannot avail themselves of any defense they may have to this action, growing out of the appointment of a receiver, for the reason that the receiver was appointed before these proceedings were begun, and before the *mandamus* case of *Rouse, Hazard & Co.* v. *Donovan*, 104 Mich. 234, was decided. It is their claim that as the defense might then have been interposed, and was not, the matter must be treated as *res adjudicata*. An inspection of the *Case of Rouse, Hazard & Co.*

discloses that neither of the defendants Holmes, Matheson, or Robinson were parties to that proceeding, or that they took any part in it, except to appear in the case before the circuit judge, and enter their protest against the circuit judge's entertaining jurisdiction over them. There was nothing in the record to indicate that any receiver had been appointed, and we are not prepared to hold that the case is *res adjudicata.* The record as now made does disclose that, before this proceeding was brought, a receiver was appointed by the chancery side of the court; and he still holds his appointment. A receiver is an officer of the court. He is undoubtedly entitled to the assets of the defendant company, if it has any. He is spoken of as the "hand of the court." High, Rec. § 2. It would be a very anomalous position, indeed, if this proceeding could be maintained after a receiver had been appointed for the very purpose of collecting the assets of the defendant association to pay its creditors. Defendants' requests 1 and 2 should have been given.

Judgment is reversed, and no new trial ordered.

GRANT and HOOKER, JJ., concurred. LONG, C. J., and MONTGOMERY, J., did not sit.