## In re CALEDONIA COAL CO.

(District Court, E. D. Michigan, N. D. October, 1918.)

### No. 835.

1. BANKRUPTCY ⬥342—CLAIMS—PETITION FOR RE-EXAMINATION.
    Where a petition of a trustee for re-examination of claims previously allowed was filed about a year after the filing of the claims, but no motion to dismiss the petition as improperly filed was made, and the reasons for delay were explained, *held*, that the petition will be treated as authorized under the bankruptcy rules for the district, which require the filing of petitions for re-examination within 60 days, unless the time therefor shall be extended.

2. BANKRUPTCY ⬥342—CLAIMS—RE-EXAMINATION—LACHES.
    In view of Bankruptcy Act, § 57k (Comp. St. § 9641), providing that claims which have been allowed may be re-examined and rejected at any time before the estate has been closed, a year's delay by the trustee in filing a petition to expunge claims previously allowed will not be deemed laches, where the claimants were not injured, for mere delay is not laches.

3. BANKRUPTCY ⬥342—CLAIMS—PETITION TO RE-EXAMINE.
    Under General Order in Bankruptcy No. 21 (89 Fed. x, 32 C. C. A. x) it is unnecessary that copies of a petition to re-examine claims previously allowed be sent to each of the claimants, and it is permissible to join all of the claimants in the single petition.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. BANKRUPTCY ⊗═══342½—REFEREES—FINDINGS.

Findings of fact of a referee in bankruptcy upon disputed questions of fact will not be set aside by the court, unless manifestly erroneous.

5. CORPORATIONS ⊗═══228—STOCKHOLDERS—LIABILITY OF.

A stockholder, who owns stock for which payment has not been made to the corporation, and who is not a bona fide holder thereof, is liable to the corporate creditors for the unpaid balance of the par value of such stock.

6. JOINT-STOCK COMPANIES ⊗═══15(1)—PARTNERSHIP ASSOCIATIONS—STOCK-HOLDERS.

The rule that a stockholder, who owns stock for which payment has not been made to the corporation, and is not a bona fide holder thereof, is liable to corporate creditors, etc., is applicable to stockholders in a partnership association.

7. BANKRUPTCY ⊗═══308—CLAIMS—RECOVERY.

Where a stockholder in a partnership association, who had not fully paid for his stock, presents a claim against the association in bankruptcy, he cannot recover thereon, as against other creditors, until he has first paid the amounts due and payable upon his stock.

8. JOINT-STOCK COMPANIES ⊗═══6—STOCK—PAYMENT IN FULL.

Though stockholders who had fully paid for their stock performed voluntary labor for a partnership association, and the value of the assets of the association increased, so that at one time it exceeded the amount of the total authorized capital stock, and no dividends were paid to stockholders, such stock cannot be treated as having been paid in full, for that would disregard the difference between the capital of the association and its capital stock.

9. BANKRUPTCY ⊗═══348—ASSOCIATIONS—WAGE CLAIMS.

Where stockholders in a partnership association engaged in mining consented that part of their wages for services rendered the association should be withheld and loaned to the association, such stockholders are not, on the bankruptcy of the association, entitled to priority upon such claims, on the theory that they were wage claims.

10. BANKRUPTCY ⊗═══348—CLAIMS—PRIORITY.

Bankruptcy Act, § 64b, subd. 5 (Comp. St. § 9648), does not make applicable the state statutes giving priority to wage claims for longer periods than three months; the restriction to three months in subdivision 4 being controlling.

In Bankruptcy. In the matter of the Caledonia Coal Company, bankrupt. Petition to review an order of the referee disallowing certain claims against the estate, and denying priority to other claims. Petition denied, and cause remanded to referee.

Harry L. Stearns and E. L. Beach, both of Saginaw, Mich., for trustee.

George C. Ryan, of East Saginaw, Mich., for claimants.

TUTTLE, District Judge. This is a petition to review an order of the referee disallowing certain claims against the estate and denying priority to certain other claims.

The Caledonia Coal Company, the bankrupt, was a Michigan partnership association, organized under the statute governing such associations, being Act 191 of the Public Acts of 1877, as amended by Pub. Acts 1881, No. 216. It was engaged in the mining of coal on a co-operative plan. Under this plan each stockholder worked as a miner in the mines owned by the company, for which he received wages

on a certain scale. The capital stock of the company consisted of 5,000 shares, of the par value of $10 each. After operating in Michigan for several years with varying degrees of success, the company was finally, in the latter part of May, 1916, compelled to file a voluntary petition in bankruptcy. Thereupon the claims involved in this proceeding were filed by over 70 of the stockholders, who claimed various sums as wages earned by them in working in the mines of the company. These claims were filed about a month after the adjudication in bankruptcy, and, upon their being filed, were allowed as a matter of course; no objections to them having been presented. The administration of the bankrupt estate was then suspended for about a year, while an attempt was made to resume the operation of the company. After about a year, however, the trustee abandoned the attempt and proceeded with the administration of the estate.

In July, 1917, the trustee filed a petition asking that the claims of these stockholders be re-examined and expunged. He alleged two grounds for the rejection of such claims: First, that the amounts claimed to be due as wages had been advanced by the claimants to the company out of their unpaid wages, for the purpose of furthering the common enterprise in which they were engaged and from which they expected to reap a profit; and, second, that the claimants were indebted to the company, on account of unpaid subscriptions for their stock, for sums at least equal to the amounts claimed to be due them. A time was fixed for the hearing on this petition, and notice thereof was duly given to the claimants. Testimony was taken before the referee. The latter then entered an order disallowing a number of the claims, and holding that the balance of such claims should be allowed merely as general unsecured claims, without any priority. This petition is filed to review such order.

[1] Certain questions raised concerning the practice followed by the trustee and referee may be first considered. Complaint is made that the petition for the re-examination of these claims was not seasonably filed, in view of the provisions of rule 32 of the Bankruptcy rules for this district. This rule provides that—

"Petition for re-examination of claims shall be filed within sixty days after the filing thereof, unless the time therefor shall be extended by the court upon cause shown and after such notice to the claimant of the hearing of the said application as the court may direct."

As already stated, the petition of the trustee was filed about a year after the filing of the claims in question, and it does not appear that there has been any formal compliance with the rule just quoted. In view, however, of the fact that due notice was sent to all of the claimants of the hearing on such petition, and as one of the questions raised by claimants and argued by both parties here is whether the petition of the trustee can be filed after the lapse of the time mentioned, I am disposed to consider this petition as if it included an application for the extension of time contemplated by the rule referred to. No motion to dismiss the petition as improperly filed was made, and the merits of the case have been fully argued. Reasons for the delay have been explained by the attorney for the trustee and are now before

the court, so that no good purpose would be served by insisting upon the presentation of a formal application for an extension of time. Treating the petition, then, as involving such an application, I am of the opinion that the delay of the trustee has been satisfactorily explained, and that sufficient cause has been shown for the necessary extension of time.

[2] It is further urged that the trustee has been guilty of such laches in filing his petition as to bar his right to do so. Delay alone does not constitute laches; the essential element being prejudice to another person by reason of the delay complained of. It does not appear that the delay in this case has resulted in any injury or prejudice to the claimants which would now make it inequitable to allow the trustee to file his objections to these claims. Section 57k of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 560 [Comp. St. § 9641]) provides that—

"Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part, according to the equities of the case, before, but not after, the estate has been closed."

Under the circumstances it cannot be held that the trustee has been guilty of laches. In re Globe Laundry (D. C.) 198 Fed. 365.

[3] Complaint is made because copies of the petition to re-examine were not sent to the claimants, and also because all of these claimants were joined in one petition. No statute, rule, or authority is brought to the attention of the court in support of these objections, which seem clearly without merit. General Order 21 (89 Fed. x, 32 C. C. A. x), which governs the practice in such a case, provides in paragraph 6 as follows:

"When the trustee or any creditor shall desire the re-examination of any claim filed against the bankrupt's estate, he may apply by petition to the referee to whom the case is referred for an order fixing a time for hearing the petition, of which due notice shall be given by mail addressed to the creditor. At the time appointed the referee shall take the examination of the creditor, and of any witness that may be called by either party, and if it shall appear from such examination that the claim ought to be expunged or diminished, the referee may order accordingly."

It will be noted that there is nothing in this rule requiring the service of a copy of the petition upon the claimant or requiring a separate petition containing the necessary allegations, and due notice of the hearing thereon was sent to each of the claimants. I am satisfied that the proper practice has been followed, and the contention to the contrary must be overruled.

Coming, then, to the merits of the case, did the referee err in the disallowance of these claims? The referee found, as a matter of fact, that the stock owned by a number of the claimants, a list of whose names is given in his findings, was not paid in full, and, furthermore, that such claimants were not bona fide purchasers of such stock.

[4] It is well settled that the findings of fact of a referee in bankruptcy upon disputed questions of fact will not be set aside by the court unless manifestly erroneous. I have carefully examined the transcript of the testimony attached to the report of the referee, and am satis-

fied that there was ample evidence in the record in support of the findings referred to. Such findings, therefore, will not be disturbed.

[5] It is elementary that stockholders, who own stock for which payment has not been made to the corporation, and who are not bona fide holders· thereof, are liable to creditors of the corporation for the unpaid balance of the par value of such stock, so far as may be necessary to pay such creditors, notwithstanding the fact that the stock may be fully paid and nonassessable as between the corporation and its stockholders. Handley v. Stutz, 139 U. S. 417, 11 Sup. Ct. 530, 35 L. Ed. 227.

[6] The same rule is applicable to a partnership association such as the bankrupt company. Rouse, Hazard & Co. v. Detroit Cycle Co., 111 Mich. 251, 69 N. W. 511, 38 L. R. A. 794; Wood v. Sloman, 150 Mich. 177, 114 N. W. 317.

[7] When, therefore, such a stockholder presents a claim against his company in bankruptcy, he is not entitled to recover thereon, as against other creditors, until he has first paid. the amount so due and payable upon his stock, for which he is so liable. Kiskadden v. Steinle, 203 Fed. 375, 121 C. C. A. 559; In re Wiener & Goodman Shoe Co. (D. C.) 96 Fed. 949.

[8] It is urged, however, that even if payment has not been expressly made upon this stock, yet because, after the stock was issued, the stockholders performed certain voluntary labor for the company, and the value of the assets of the company increased, so that at times it exceeded the amount of the total authorized capital stock, and no dividends were paid to stockholders, therefore, such stock should be treated as having been paid in full. This argument overlooks the difference between the capital of the company and its capital stock. The former consists of the property owned by the company, and varies in extent and value with the changes in the quantity and value of the property owned by the company from time to time. The capital stock, however, is the trust fund contributed by the stockholders for the benefit, not only of the company, but also of its creditors, who have a right to rely upon its payment by the stockholders to the full amount of its par value. The fact that the capital of the company increases in value after its organization does not operate as a payment by the stockholders on their stock, any more than a decrease in value of such capital would reduce the amount to which the stockholders are entitled to credit for payments on their stock subscriptions. Scoville v. Thayer, 105 U. S. 143, 26 L. Ed. 968. This contention is plainly without merit.

[9] It is claimed, also, that the referee erred in denying priority to any of these claims. It appears that at certain meetings of the stockholders and of the board of managers of the company, held about four months prior to the filing of the petition in bankruptcy, the financial condition of the company was considered, and resolutions were passed declaring that part of the wages of the men should be withheld on each pay day for the purpose of providing necessary funds to meet running expenses. It appears, also, that from time to time thereafter a part of the wages of these claimants was retained by the company for the purpose mentioned. It was the claim of the trustee, which

was adopted by the referee, that as to the sums thus withheld out of the wages earned by these claimants their claims should be considered as brought for the recovery of money loaned, and not for wages, and that, therefore, such claims were not entitled to the priority accorded to labor claims. It is, in my opinion, clear that to the extent that these stockholders permitted the company to retain and use money due them as wages they must be held to have loaned this money to the company.

In so far as they consented, or failed to object, to the action of the company in deducting these sums from their pay and crediting them with the amounts on the books of the company as loans made by them, they cannot now be heard to deny that they in reality made such loans. While the record before me is not very definite or positive as to the course of dealing in regard to this matter, it does appear from the pay roll book of the company that transfers were regularly made from the labor accounts to special loan accounts with the miners. Of course, the mere arbitrary withholding of money due the men as wages, if done without their consent, express or implied, would not be sufficient to change the character of these claims from unpaid wages to unpaid loans. Where, however, it appears that an amount was so withheld and so charged upon the books, and that the claimant accepted the balance of his wages without objection, I am satisfied that the proper inference to be drawn is that the claimant understood and consented that the sum not paid to him was retained by the company as a loan. As to such loans, claimants are not entitled to priority, as for labor claims.

The actual claims as filed have not been shown to me, and I am unable to determine whether the claimants are seeking to recover only the amounts retained from their wages as loans, or whether they are claiming that, not only such loans, but also wages earned in addition thereto, are due and unpaid. Nor am I certain, from the record before me, whether, when the wages earned became due and payable, all of such wages were withheld or only a portion thereof. The referee, however, will doubtless have no difficulty in properly applying the principles which I have stated to the facts in each particular case.

[10] Finally, it is urged by the claimants that under the law of Michigan all claims for sums due for work and labor are entitled to priority, and not merely claims for wages earned during the three months prior to the date of the filing of the petition in bankruptcy, as provided by the Bankruptcy Act. The contention is that the fourth subdivision of section 64b of the Bankruptcy Act (section 9648), providing for the priority of wage claims earned within the three months mentioned, is enlarged by the fifth subdivision of said section, which gives priority to "debts owing to any person who by the laws of the states or the United States is entitled to priority"; so that by virtue of the Michigan statute, giving priority to all wage claims against insolvent corporations without limitation as to time, these claimants are entitled to priority without such limitation.

This contention cannot be sustained. The clause of the Bankruptcy Act just quoted, relating to debts entitled to priority by the state laws, must be read in connection with the preceding clause, which indicates the intention of Congress to provide a fixed and certain preference for

wage claims as such, without regard to the varying degrees of priority accorded to such claims by the laws of the different states. This provision, therefore, supersedes the state laws on the same subject; the authority of Congress over this subject being, to the extent to which it is exercised, exclusive. In re Rouse, Hazard & Co., 91 Fed. 96, 33 C. C. A. 356; In re Slomka, 122 Fed. 630, 58 C. C. A. 322.

The cause will be remanded to the referee for proceedings not inconsistent with the terms of this opinion.